# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANDREA CANNON, *on behalf of herself and all other similarly situated* <br><br>    Plaintiff, <br><br>      v. <br><br> WELLS FARGO BANK, N.A., *et al.*, <br><br>    Defendants. | **Civil Action No. 12-465 (CKK)** |

## MEMORANDUM OPINION
(December 10, 2012)

Plaintiff Andrea Cannon filed a purported class action against Defendants Wells Fargo Bank, N.A., Wells Fargo Insurance, Inc., QBE Specialty Insurance Co., and QBE FIRST Insurance Agency, Inc. (formerly known as Sterling National Insurance Agency, Inc.), in the Superior Court for the District of Columbia, asserting a number of claims concerning lender-placed mortgage insurance. The QBE Defendants subsequently removed the case to this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), and the Court's federal question jurisdiction, 28 U.S.C. § 1331. Presently before the Court is the Plaintiff's motion to remand. Upon consideration of the parties' pleadings,[1] the relevant legal authorities, and the record before the Court, the Court has subject matter jurisdiction in this action pursuant to both the Class Action Fairness Act and federal question jurisdiction. Accordingly, the Plaintiff's [9] Motion to Remand is DENIED.

---

[1] See Pl.'s Mem. in Supp. of Mot. to Remand ("Pl.'s Mot."), ECF No. [9-1]; Wells Fargo Bank, N.A. & Wells Fargo Ins., Inc.'s Opp'n (Wells Fargo Opp'n), ECF No. [16]; QBE Specialty Ins. Co. & QBE FIRST Ins. Agency, Inc.'s Opp'n (QBE Opp'n), ECF No. [17].

# I. BACKGROUND

The Court briefly recounts only those facts necessary to the disposition of the Plaintiff's motion.  In December 2007 the Plaintiff took out a mortgage on her real property located at 1235 Queen Street, NE, Washington, D.C., in the amount of $307,665.50.  Compl., ECF No. 1, at 3-4. The mortgage is currently owned and serviced by Defendant Wells Fargo Bank.  *Id.* at 4. According to the Complaint, Wells Fargo Bank requires mortgagees to maintain insurance on the real property subject to mortgages owned and/or serviced by the Bank.  *Id.* at 7, ¶ 12.  The deeds of trusts issued by Wells Fargo Bank purportedly contain a clause indicating that if the mortgagee fails to maintain a sufficient level of insurance coverage or allows the insurance policy to laps, the Bank may "forcefully place insurance on the property."  *Id.*  The Plaintiff asserts that at all times relevant to the Complaint she maintained the necessary insurance on her property subject to the mortgage owned and serviced by Wells Fargo Bank.  *Id.* at 7-8, ¶ 14;

On or about August 31, 2011, Wells Fargo Bank informed the Plaintiff that despite previous correspondence on the issue, the Bank still did not have evidence of homeowners/hazard insurance for the property in question.  Compl., Ex. 6 at 1.  The letter indicated the Bank had secured temporary insurance coverage effective July 16, 2011, which would be cancelled upon receipt of proof of other insurance.  *Id.*  The letter further indicated that "[t]here is no charge to you if there has been no lapse in coverage," but "[y]ou will be charged for any gap between the expiration of your last policy and the effective date of the new policy." *Id.*  The Bank advised the Plaintiff that she had the right to independently obtain insurance and urged her to do so, noting "[i]n nearly all instances, coverage we obtain may be more expensive than a policy you could obtain from an agent or insurance company of your choice."  *Id.* at 2. On February 9, 2012, the Plaintiff received a nearly identical letter, with the same temporary

insurance effective date as the August 31, 2011 letter.  Compl., Ex. 7 at 1.

The thrust of Plaintiff's Complaint is that despite maintaining continuous insurance coverage on her property, Wells Fargo Bank obtained "unnecessary, unauthorized [sic] duplicative insurance," and charged Plaintiff the full amount of the premium although "a substantial portion of the premiums are refunded to Wells Fargo through various kickbacks and/or commissions or kickbacks disguised as commissions."  Compl. at 11, ¶ 26.  The Plaintiff specifically alleges that Wells Fargo Bank "entered into an exclusive arrangement with QBE FIRST to be the sole insurance provider for all forced placed policies," and charged premiums in excess of what could have been obtained for similar policies "in the open market."  *Id.* at 11, ¶ 28.  As to putative class member-mortgagees whose insurance policies in fact lapsed, the Plaintiff alleges the Defendants obtained policies with "excessive premium[s]," instead of renewing the lapsed policy with the mortgagees' previous carrier(s).  Compl. at 12, ¶ 29.  The Plaintiff filed this suit in the Superior Court for the District of Columbia as a purported class action on behalf of what is now believed to be 738 putative class members, Pl.'s Mot. at 13, alleging a number of violations of the common law, the Truth in Lending Act, 15 U.S.C. 1601 note, and the District of Columbia Consumer Protection Procedures Act ("CPPA"), D.C. Code § 28-3901 *et seq.*  Compl. at 25-49.  The QBE Defendants removed the action to this Court on the grounds the Complaint stated a federal question, and satisfied the requirements of the Class Action Fairness Act.

## II.  LEGAL STANDARDS AND DISCUSSION

### A.     *Federal Question Jurisdiction*

This Court has original jurisdiction over all civil actions "arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  "[A] suit arises under the Constitution

and laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution." *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908). The initial Complaint in this matter facially seeks relief for violations of the Truth in Lending Act. *E.g.*, Compl. at 2 ("Defendants' [sic] violation Regulation Z and other provisions of the Truth In Lending Act. "); *id.* at 17 (describing certain conduct as "a violation of the Truth In Lending Act's (TILC) [sic] disclosure requirement"); *id.* at 39. The Plaintiff asserts that her citation to the Truth in Lending Act "only brings clarity to the disclosure requirements of both DC Code and (TILA) [sic]." Pl.'s Mot. at 7. The plain text of the Complaint indicates otherwise.

The Complaint specifically includes an unnumbered count titled "VIOLATION OF THE TRUTH IN LENDING ACT," seeking damages in the amount of $20,000,000 for the Plaintiff and each class member. *Id.* at 39, ¶¶ 81-83. At the end of her motion, the Plaintiff explains that D.C. Code § 28-3904(dd) states that any violation of title 16 of the D.C. Municipal Regulations is to be considered a violation of the CPPA, and that title 16 "incorporates by reference twelve section of the federal TILA." Pl.'s Mot. at 17; *see* D.C. Mun. Regs. tit. 16 § 101.1. However, the Complaint does not allege that the Defendants violated section 28-3904(dd) or the municipal regulations, but rather violated the federal statute itself, and the Plaintiff cannot simply amend her Complaint in her pleadings in support of her motion. *Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.*, 297 F.Supp.2d 165, 170 (D.D.C. 2003). The Plaintiff's Complaint states a federal claim, therefore the Court has jurisdiction under section 1331. *Cf. Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 7 (2003).

In response to the Defendants' notice of removal, the Plaintiff filed the instant motion disclaiming any request for relief under federal law, and attached a proposed Amended

Complaint purporting to remove any cause of action under the Truth in Lending Act.  *See* Am. Compl., ECF No. [9-3].  "[P]laintiff's change in legal theory cannot defeat jurisdiction if a federal question appeared on the face of the complaint."  *Herero People's Reparations Corp. v. Deutsche Bank, A.G.*, 370 F.3d 1192, 1195 (D.C. Cir. 2004).  The Court has federal question jurisdiction over the initial Complaint, which the Plaintiff cannot defeat by eliminating the Truth in Lending Act claim from her Amended Complaint.  The Plaintiff may proceed with the claims stated in her Amended Complaint, but it is the initial Complaint that controls for purposes of determining this Court's subject matter jurisdiction.

B.     *Class Action Fairness Act*

Even if the Court were to consider only the claims stated in the Amended Complaint, the Court still has subject matter jurisdiction. The Class Action Fairness Act ("CAFA") provides that federal district courts have subject matter jurisdiction over any class action in which (1) the amount in controversy exceeds $5,000,000; (2) "any member of a class of plaintiffs is a citizen of a State different from any defendant"; (3) the aggregate number of proposed class members is 100 or more; and (4) the primary defendants are not states or governmental entities.  28 U.S.C. § 1332(d)(2), (5).  The Plaintiff's Amended Complaint satisfies each of these requirements.  The Plaintiff does not contest the fact that the third and fourth requirements are met in this case. Rather, the Plaintiff's motion focuses entirely on the first two elements: the amount in controversy and minimal diversity.

1.     Amount in Controversy

The Plaintiff alleges that the amount in controversy requirement for removal under the CAFA is not satisfied.  Initially, the Court notes that the Plaintiff cannot credibly argue that the original Complaint fails to meet the amount in controversy requirement; Count Six of the initial

Complaint by itself seeks $5,000,000 in compensatory damages for *each* class member.  Compl. at 46, ¶ 1001.  In terms of the Amended Complaint, the Plaintiff alleges that the amount in controversy requirement for removal under the CAFA is not satisfied because the CPPA limits individual recovery to $1,500, which would lead to an aggregate total of $1,107,000 in damages for the 738 class members.  Pl.'s Mot. at 9, 12.  The Plaintiff's argument misconstrues the limitations provided in the CPPA.  The statute provides that damages shall be $1,500 *per violation or treble damages, whichever is greater.*  D.C. Code § 28-3905(k)(1)(A) (emphasis added).  The Plaintiff asserts that she "is restricting her prayer for damages and for similar [sic] situated class members to the D.C., statutory limits."  Pl.'s Mot. ¶ 17.  The ambiguity in this disclaimer renders it meaningless; the "statutory limit" could far exceed $1,500 per class member by trebling each class member's actual damages.

To the extent the Plaintiff intended to say that she (and each class member) will seek *only* $1,500 per violation, there are several issues with this contention.  First, the Plaintiff's Amended Complaint does not purport to limit recovery for violations of the CPPA to $1,500.  Am. Compl. ¶ 83 (requesting "monetary damages permissible by the laws of the District of Columbia as to compensatory damages and reasonable attorney fees and cost") (errors in original).  The Plaintiff cannot amend her Amended Complaint to limit her request for damages through an assertion in her motion.  *Arbitraje Casa de Cambio*, 297 F.Supp.2d at 170.  Second, the unnumbered count of the Amended Complaint relating to the CPPA (beginning with paragraph 75) lists ten separate violations of the CPPA.  Am. Compl. ¶ 75 (alleging violations of D.C. Code § 28-3904(e), (h), (i), (j), (k), (l), (q), (r), (t), and (u)).  Ten violations of the statute with damages of $1,500 per violation for each of the 738 members of the class amounts to a total of $11,070,000—more than double the amount in controversy necessary under the CAFA.  Third, the Plaintiff's argument

assumes that the amount in controversy for purposes of the CAFA would be based *only* on the CPPA claims, and not all class claims asserted in the Complaint.  In fact, the only count of the Amended Complaint that does not purport to seek relief on behalf of all class members is Count Eight.  Am. Compl. at 51-52, ¶¶ 113-116.  Taking into consideration the other class counts, the amount in controversy far exceeds the necessary amount.   Count Four of the Amended Complaint, which asserts fraudulent misrepresentation and concealment against Wells Fargo, explicitly demands $5,000,000 in punitive damages.  Am. Compl. ¶ 91; *see also id.* (seeking "Compensatory damages and reasonable attorney fees and cost and compensation for Class Members to the extent permissible by lay, statute and equity") (errors in original).  Even utilizing the Plaintiff's proposed maximum damages under the CPPA claim---that is, $1,107,000---the Complaint in aggregate requests more than $6,107,000 in damages, plainly meeting the requirements of the Class Action Fairness Act.

### 2.    Minimal Diversity of Citizenship

The Plaintiff further argues that the diversity requirement of the CAFA is not satisfied here.  Initially, the Court notes that the Plaintiff offers no authority for the assertion that she is "deemed a citizen of her principal place of business."  Pl.'s Mem. at 10.  The Amended Complaint explicitly states that the Plaintiff brings this suit "as an individual," and not in some corporate capacity representing her business.  Am. Compl. at 2.  In terms of natural persons that are citizens of the United States, the relevant inquiry regarding citizenship for diversity purposes is where the person is domiciled.  *See Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989).  The Plaintiff does not dispute the Defendants' contention that she is domiciled in the state of Maryland.  Wells Fargo Opp'n at 2-4.  Having failed to refute this argument, the Plaintiff is considered a citizen of Maryland for purposes of this action.  *Hopkins v. Women's*

*Div., Gen. Bd. of Global Ministries*, 284 F.Supp.2d 15, 25 (D.D.C. 2003) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").

The Plaintiff alleges that the Defendants are all citizens of the District of Columbia because "there is insurance claims involved," citing 28 U.S.C. § 1332(c)(1). Pl.'s Mem. at 10. Even if true, since the Plaintiff is a citizen of a different state, namely Maryland, the minimal diversity requirement of the Class Action Fairness Act would still be satisfied. Nevertheless, because the Defendants' citizenship is relevant to the Plaintiff's argument regarding the Court's discretionary jurisdiction under the CAFA, the Court shall address the merits of the Plaintiff's contention. Section 1332(c)(1) provides, in relevant part, that

> in any *direct action* against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of
>
> > (A)  every State and foreign state of which the insured is a citizen;
> >
> > (B)  every State and foreign state by which the insurer has been incorporated; and
> >
> > (C)  the State or foreign state where the insurer has its principal place of business[.]

28 U.S.C. § 1332(c)(1)(A)-(C) (emphasis added). However,

> Courts have uniformly defined the term "direct action" as used in this section as those cases in which a party suffering injuries or damage for which another is legally responsible is entitled to bring suit against the other's liability insurer without joining the insured or first obtaining a judgment against him.

*Beckham v. Safeco Ins. Co. of Am.*, 691 F.2d 898, 901-901 (9th Cir. 1982). In other words, this case is not a "direct action" for purposes of section 1332(c)(1) because the Plaintiff is not seeking payment from the Defendants under a policy insuring a third party who has not joined in

the suit.  Rather, the Plaintiff's claims arise from procedural issues relating to the issuance of an insurance policy *to* the Plaintiff.  Thus the citizenship of the Defendants for purposes of the CAFA analysis in this case is governed by the general rules of citizenship for corporations, not the special provisions for direct actions against insurers.

Defendant Wells Fargo Bank, N.A., is a national banking association with its principal place of business in South Dakota.  Wells Fargo's Opp'n at 4.  For purposes of diversity jurisdiction, Wells Fargo Bank is considered a citizen of South Dakota only.  *Wachovia Bank v. Schmidt*, 546 U.S. 303 (2006) ("[A] national bank . . . is a citizen of the State in which its main office, as set forth in its articles of association, is located.").  Wells Fargo Insurance, Inc. is incorporated in Minnesota with its principal place of business in St. Louis Park, Minnesota.  Wells Fargo's Opp'n at 4; Am. Compl. ¶ 3.  Pursuant to section 1332, Wells Fargo Insurance is a citizen of Minnesota only.  28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business.").  QBE Specialty Insurance Co. is incorporated in North Dakota and has its principal place of business in New York, while QBE FIRST Insurance Agency, Inc. (formerly known as Sterling Insurance Agency, Inc.) is incorporated in California and maintains its principal place of business in Georgia.  Notice of Removal, ECF No. [1], ¶¶ 6-7.  Therefore, the QBE Defendants are considered citizens of North Dakota and New York, and California and Georgia, respectively.  The Plaintiff, as a citizen of Maryland, is a citizen of a different state than each of the Defendants, which more than satisfies the minimum diversity requirements of the CAFA.  28 U.S.C. § 1332(d)(2)(A).

The Plaintiff urges the Court to decline jurisdiction under CAFA pursuant to subsection

(3),[2] which provides that the Court

> may, in the interests of justice and looking at the totality of the circumstances, decline to exercise jurisdiction . . . over a class action in which greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed based on consideration of [certain factors.]

28 U.S.C. § 1332(d)(3).  Setting aside the question of the citizenship of the class members, none of the Defendants are citizens of the state in which the action was originally filed, the District of Columbia, therefore the Court has no discretion to decline jurisdiction over this matter.

### III. CONCLUSION

For the foregoing reasons, the Court finds the QBE Defendants properly removed this action to federal court.  The Complaint on its face states a federal claim, establishing federal question jurisdiction.  The Plaintiff cannot defeat federal question jurisdiction by amending her Complaint to remove the federal claim.  Furthermore, the Complaint and Amended Complaint each satisfy the requirements for federal subject matter jurisdiction pursuant to the Class Action Fairness Act: the amount in controversy exceeds $5,000,000, there is minimal diversity between the parties, the number of class members exceeds 100, and none of the Defendants are state or governmental entities.  Because the Court has subject matter jurisdiction over the Complaint, the Plaintiff's [9] Motion to Remand is DENIED.   An appropriate Order accompanies this Memorandum Opinion.

_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE

---

[2]  The Plaintiff's Motion incorrectly cites to subsection 4, which requires the Court to decline to exercise jurisdiction in certain situations not applicable here.