# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANDREA CANNON, *on behalf of herself and all other similarly situated*<br><br>　Plaintiff,<br><br>　　v.<br><br>WELLS FARGO BANK, N.A., *et al.*,<br><br>　Defendants. | **Civil Action No. 12-465 (CKK)** |

## MEMORANDUM OPINION
(March 1, 2013)

Plaintiff Andrea Cannon filed a proposed class action suit against Defendants Wells Fargo Bank, N.A. and Wells Fargo Insurance, Inc., (collectively the "Wells Fargo Defendants"), as well as QBE Specialty Insurance Co. and Sterling National Insurance Agency, Inc., now known as QBE First Insurance Agency, Inc., (collectively the "QBE Defendants") in the Superior Court for the District of Columbia.  The Defendants removed the action to this Court, and the Court subsequently denied the Plaintiff's motion to remand.  Presently before the Court are the Defendants' motions to dismiss.[1]  Upon consideration of the pleadings, the relevant legal authorities, and the record for purposes of a motion to dismiss, the Court finds that it lacks personal jurisdiction over QBE Specialty, and the Plaintiff fails to state a claim with respect to either QBE Defendant.  The Court further finds that the Plaintiff has adequately pled a breach of the covenant of good faith and fair dealing, but otherwise fails to state a claim against the Wells

---

[1]  See Wells Fargo Defs.' Mot. to Dismiss, ECF No. [10]; Pl.'s Opp'n to Wells Fargo Defs.' Mot. to Dismiss, ECF No. [20]; Wells Fargo Defs.' Reply, ECF No. [19]; QBE Defs.' Am. Mot. to Dismiss, ECF No. [12] (as modified by the Court's 2/28/13 Order, ECF No [28]); Pl.'s Opp'n to QBE Defs.' Am. Mot., ECF NO. [21]; QBE Defs.' Reply, ECF No. [22]; Pl.'s Surreply, ECF No. [23-1].

Fargo Defendants.  Accordingly, for the reasons stated below, the QBE Defendants' Amended Motion to Dismiss is GRANTED and the Wells Fargo Defendants' Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

## I. BACKGROUND

### A.    *Factual Allegations*

For purposes of the Defendants' motions to dismiss for failure to state a claim, the Court presumes the following facts pled in the Complaint are true.  The Plaintiff obtained a mortgage from Wachovia Bank, predecessor in interest to Defendant Wells Fargo Bank, on property located at 1235 Queen Street, Northeast, Washington, D.C., 20002, in December 2007.  Pl.'s Ex. 10 (Deed of Trust) at 1.  The Deed of Trust indicates that if the borrower fails to maintain sufficient insurance coverage on the mortgaged property, the lender "may obtain insurance coverage, at Lender's option and Borrower's expense," and "the cost of the insurance coverage so obtained might significantly exceed the cost of insurance" that the borrower might have obtained.  *Id.* at 4.  Between July 16, 2005, and July 16, 2008, the Plaintiff maintained property and liability insurance on the Queen Street property through Scottsdale Insurance Company.  Pl.'s Ex. 1 (2/16/12 Ltr. Old Dominion Ins. Agency to Pl.).  From July 16, 2008 through at least February 16, 2012, Great American Insurance Company provided commercial property and liability insurance coverage for the Queen Street property.  *Id.*; *see also* Pl.'s Ex. 9-A (Great Am. Ins. Co. Policy Decl.) (reflecting coverage of Queen Street Property from July 16, 2011 until July 16, 2012).

### 1.    Correspondence from the Wells Fargo Defendants

According to the Exhibits attached to her Complaint, on August 1, 2011, August 31, 2011, January 10, 2012, and February 9, 2012, the Plaintiff received letters from Defendant

Wells Fargo Insurance indicating that the Plaintiff "may qualify for a unique homeowners insurance program offered through Wells Fargo Insurance." Pl.'s Exs. 2-5. The letters provided a toll-free number for the Plaintiff to call to see if she qualified, and indicated that if she did qualify, she would receive "a no-obligation quote within minutes that may even save you money." *Id.* The letters further indicated that she *might* be eligible for "[q]uotes from multiple insurance companies," "[i]mproved coverage compared to your current homeowners or property insurance," and "[d]iscounts for smoke alarms, security systems and recently constructed homes." *Id.* The Plaintiff does not allege that she responded to any of the letters or otherwise sought insurance from Wells Fargo Insurance. In fact, elsewhere in her Complaint, the Plaintiff indicates that she did not respond to the solicitations from Wells Fargo Insurance. *Id.* at ¶ 75, p. 35.

On August 31, 2011, the Plaintiff received a separate letter from Wells Fargo Bank, which stated in relevant part:

> Previously we wrote to inform you that we did not have evidence of homeowners/hazard insurance coverage to protect your property per the terms of your [Deed of Trust]. We requested that you provide current evidence of homeowners/hazard insurance coverage to us. We have not received a homeowners/hazard policy covering your dwelling.

> Therefore, Wells Fargo Bank N.A., has secured temporary insurance coverage in the form of a binder effective as of [July 16, 2011]. This insurance is provided by QBE Insurance Corporation. This binder cannot be renewed.

Pl.'s Ex. 6 (8/31/11 Ltr. Wells Fargo Bank to Pl.) at 1. The letter indicated that the Plaintiff had the right to purchase insurance from the company of her choice, and that if she already had coverage on the property, she could submit that information to Wells Fargo Bank. *Id.* Moreover, "[u]pon prompt receipt of your policy, this binder will be cancelled. There is no charge to you if there has been no lapse in coverage." *Id.* With respect to the temporary

insurance coverage Wells Fargo had obtained on the property, the letter stated that "[t]he full year premium for this policy is shown on the enclosed binder.  This premium will be advanced by Wells Fargo Bank, N.A. and will be added as a fee to your account."  *Id.*  The Plaintiff implies but does not explicitly state that a copy of the binder was *not* attached to the August 31, 2011 letter.  Compl. ¶ 21.  The Plaintiff alleges that, in light of the letter from Wells Fargo Insurance stating the Plaintiff may be eligible for "[i]mproved coverage compared to your current homeowners or property insurance," Wells Fargo Bank had actual knowledge that the Plaintiff's insurance coverage on the Queen Street property had not lapsed.  *Id.* at ¶ 36.

The letter went on to indicate that "[i]n nearly all instances, the insurance coverage we obtain may be more expensive than a policy you could obtain from an agent or insurance company of your choice."  Pl.'s Ex. 6 at 2.  The letter further disclosed that "[t]he insurance we obtain will be arranged by Wells Fargo Insurance, Inc., a licensed insurance agency and an affiliate of Wells Fargo Bank, N.A.  Wells Fargo Insurance, Inc. will receive a commission on the insurance we obtain.  Wells Fargo bank, N.A., is not affiliated with the insurance company."  *Id.*  The Plaintiff's Complaint does not indicate how she responded to the August 31, 2011 letter, if at all.

The Plaintiff received a substantively identical letter from Wells Fargo Bank on February 9, 2012.  Pl.'s Ex. 7 (2/9/12 Ltr. Wells Fargo Bank to Pl.).  Attached to the letter was a 90-day binder from QBE Insurance Corporation, disclosing a premium of $3,064.32.  Pl.'s Ex. 8.  The document indicated the "policy term" ran from July 16, 2011, until July 16, 2012.  The binder stated that

> [W]e have secured temporary coverage in the form of a 90-day binder through the
> Company shown above and you will be charged for the policy premium.  This
> binder covers the described property for risks of direct loss subject to the terms,
> conditions, and limitations of the policy in current use by the company.  If
> evidence of acceptable coverage is received during this binder period, you will be
> charged only for any lapse in coverage.  This coverage will be cancelled back to
> the original effective date, with no premium charge applying, if you provide
> coverage effective on or before the effective date of this binder.

*Id.*  The Plaintiff notes that the premium for the 90-day binder from QBE Insurance Corp., if applied to a 12-month policy, exceeded the premium charged by Great American Insurance by $6,487.28.  Compl. ¶ 23; *cf.* Pl.'s Ex. 8 *with* Pl.'s Ex. 9-A.  The Defendants contend that despite the "90-day" moniker, $3,064.32 represented the yearly premium for the policy.  Wells Fargo Defs.' Reply at 3, n.2; QBE Defs.' Reply at 5-6.  The parties (and the Court) generally refer to the policy reflected in the 90-day binder as the "force-placed," "lender-placed," or "LPI" policy.

The Complaint does not indicate whether or not the Plaintiff responded to the February 9, 2012 letter.  She does not specifically allege that her mortgage account was actually charged the premium stated on the 90-day binder (or any portion thereof), though at various points in her Complaint the Plaintiff alleges she paid the premium associated with the LPI policy.  Elsewhere, the Plaintiff generally alleges that

> If Defendants believes that the Homeowner cannot afford the premium; the
> premium is scrumptiously attached to the monthly mortgage payments in small
> increments so as to not alarm the homeowner of the actual premium cost.  Or,
> Defendants will attach the cost of the premium to the principal of the mortgage or
> alternate the payments between the principal and the monthly payment.  This
> practice misleads the homeowner as to the amount attributed to the principal and
> interest on the mortgage. *Such is the case with Plaintiff in another matter*.

Compl. ¶ 41 (emphasis added).  The Plaintiff does not allege which approach Wells Fargo Bank took with respect to her account for the Queen Street property.

### 2.    The QBE Defendants and the "Kickback" Scheme

Apart from describing QBE Specialty as a "surplus line insurance provider doing

5

business through Wells Fargo and independently in the District of Columbia," the Complaint does not contain any specific factual allegations against QBE Specialty.  Compl. ¶ 5.  The Plaintiff alleges that Wells Fargo Insurance is a "captive insurance agent for Wells Fargo [Bank]," and "does nothing to assist in obtaining the force-place insurance policy and exists only so that Wells Fargo [Bank] can collect kickbacks or commissions related to the force-placed insurance policies."  *Id.* at ¶ 4.

Likewise, with respect to QBE First, the Plaintiff asserts that "QBE First does nothing to assist in finding the force-placed insurance policy and exist [sic] only to provide kickbacks and/or collect excessive commissions related to the force-placed policies."  Compl. ¶ 6.  The Plaintiff claims that "QBE has access to and searches Wells Fargo's database to find lapsed insurance policies, the same database contains homeowner's existing voluntary insurance policies."  *Id.* at ¶ 37.  The Plaintiff asserts that QBE First "monitor[s] Wells Fargo's entire portfolio for not only lapses in coverage, but concealing voluntary coverage's so that the Wells Fargo Collateral in the Property can take on the character of uninsured for the imposition of forced-collateral insurance coverage."  *Id.* at ¶ 38 (all errors in original).  In terms of the purported "kickback" scheme, the Plaintiff alleges that

> Wells Fargo receives kickbacks disguised as commissions from the force-placed companies or the insurance brokers or agents once one of the high-priced, force-placed, insurance policies is purchased.  These kickbacks are directly tied to the cost of the force-placed insurance. The kickback(s) is a percentage of the total cost of the policy. The total cost of the policy is paid by Plaintiff-Class Members. This arrangement provides the mortgage server with an incentive to purchase the highest price force-placed insurance policy on a non-competitive basis that it can-the higher the cost of the insurance policy, the higher their kickbacks disguised as commission.

*Id.* at ¶¶ 32-33 (all errors in original).  The Plaintiff separately charges that QBE First provides a "bundle of services" to Wells Fargo (presumably the Wells Fargo Bank Defendant), including

"administering and servicing the mortgages."  *Id.* at ¶ 38.

  B.  *Specific Claims*[2]

  The Plaintiff purports to bring this action on behalf of a nationwide class of "[a]ll individuals, who, within the applicable statute of limitation, were charged for force-placed insurance policy procedure through Defendants at an excessive premium whether the homeowners' policy had or had not lapsed."  Compl. ¶ 47.  According to the Complaint, the questions of law and fact purportedly common to the class include:

- Whether the premiums charges for force placed insurance were derived from a non-competitive process;

- Weather [sic] Wells Fargo breached the implied covenant of good faith and fair dealing by entering into an arrangement with QBE FIRST which resulted in their charging Plaintiff and Class Members excessive amounts of force-placed insurance premiums[;]

- Weather [sic] the Defendants manipulated the force placed in order to maximize the profits to themselves to the detriment of Plaintiff and the Class[;]

- Whether the provision in the mortgage agreement relating to force-placed insurance is procedurally and substantively unconscionable because it does not contemplate or authorize Defendant to derive hidden financial benefits by force-placing the high cost insurance premiums[;]

- Whether the premiums charged are illegal and excessive because they include kickbacks and unwarranted "commissions," and include charges for a bundle of administrative services that QBE provides to Wells Fargo that are not chartable to Plaintiff under the mortgage; and

- Whether the premiums charged to Plaintiff and the Class were bona fife [sic] and reasonable under Federal law and the laws of the District of Columbia.

---

[2] Unfortunately, the Plaintiff creates a great deal of confusion in her Complaint by indicating she would refer to the QBE Defendants collectively as "QBE First," and the Wells Fargo Defendants collectively as "Wells Fargo.  Compl. ¶¶ 4, 6.  Out of an abundance of caution, the Court assumes the Plaintiff brings all claims referring to QBE First as applying to both QBE Defendants, and likewise that all claims asserted against Wells Fargo apply to both Wells Fargo Defendants.

*Id.* at ¶ 51.

On behalf of herself and the purported class, the Plaintiff asserts seven causes of action. First, the Plaintiff alleges the Wells Fargo Defendants breached the implied covenant of good faith and fair dealing. *See* Compl. ¶¶ 59-62.[3] The Plaintiff alleges the Wells Fargo Defendants breached this duty implied in the Deed of Trust by (1) obtaining lender-placed insurance on the Queen Street property despite actual knowledge the Plaintiff maintained voluntary insurance coverage on the property; (2) failing to disclose the cost of the lender-placed insurance policy until February 9, 2012, nearly seven months after the policy purportedly went into effect; (3) purposefully selecting an "exorbitantly-priced" lender-placed insurance policy and failing to seek a competitive price for that policy; (4) advertising that the "insurance coverage was special and that the selection of the insurance coverage would be obtained through competitive bids with an premium cost competitive with the cost of Plaintiff's existing voluntary coverage"; (5) taking a commission on the premium from the lender-placed insurance policy; (6) "[c]harging Plaintiff for having QBE FIRST perform Wells Fargo's obligation of administering it mortgage portfolio which is not legally chargeable to Plaintiff"; and (7) failing to disclose whether the premium would be charged to the Plaintiff as part of her mortgage principal or "part of the monthly payments on the mortgage so as to be deducted from that part of the payment which is customarily interest, which in turn would decrease substantially the portion that are customarily paid to the principal." *Id.* at ¶ 59(ii).

Second, the Plaintiff alleges that QBE First and the Wells Fargo Defendants were unjustly enriched. *See* Compl. ¶¶ 63-73. The Plaintiff asserts, in relevant part, that she paid for "excessive, non-competitive, duplicative and unnecessary coverage." *Id.* at ¶ 65. Thus,

---

[3] Paragraph 59 of the Complaint is apparently mis-labeled as paragraph 69.

according to the Plaintiff, she "conferred a financial benefit on Defendants," but "received absolutely no consideration for the financial benefits she [] conferred upon Defendants." *Id.* at ¶¶ 66-67.  In terms of the Wells Fargo Defendants, the Plaintiff claims that "Defendant Wells Fargo, with direct and indirect contact with Plaintiff, directly benefited from its wrongful conduct related to the force-placed insurance because it received kickbacks disguised as commissions paid by Plaintiff." *Id.* at ¶ 69.  For "QBE First," the Plaintiff contends that "with direct and indirect contact with Plaintiff, directly benefited from its wrongful conduct . . . because it received directly illegally obtained payments from Plaintiff without consideration to Plaintiff." *Id.* at ¶ 70.  Thus, the Plaintiff asserts that the Defendants "will be unjustly enriched if they are allowed to retain the financial benefits." *Id.* at ¶ 71.

Third, the Plaintiff asserts a claim for "fraudulent material misrepresentation of material facts," "fraudulent concealment of material facts," and "fraudulent omission of material facts" against both of the QBE Defendants.  Compl. ¶¶ 74-76, 80-83.[4]  This claim includes thirteen separate purported violations of common, state, and Federal law, which the Court shall refer to as Counts 3A-3M for ease of reference.

In terms of common law fraud claims (Count 3A), the Plaintiff alleges that the QBE Defendants: (1) "through misleading and false advertisement," "falsely promised Plaintiff that she may qualify for special insurance at a competitive rate when at all times imposing upon Plaintiff unnecessary coverage at non-competitive rates"; (2) "concealed from Plaintiff the cost of [the lender-placed insurance policy for] seven (7) months"; and (3) falsely represented that the Plaintiff did not maintain voluntary insurance coverage on the Queen Street property and used that representation to obtain a lender-placed insurance policy for the property.  Compl. ¶ 74(5)-

---

[4]  The Complaint omits paragraphs numbered 76 through 79.

(6).

Counts 3B-3L allege that the QBE Defendants violated a number of provisions of the District of Columbia Consumer Protection Procedures Act (the "CPPA"), D.C. Code § 28-3901 *et seq.* Compl. ¶ 75. The Court briefly addresses the allegations attendant to each purported violation. Count 3B alleges the QBE Defendants misrepresented "a material fact which has a tendency to mislead," D.C. Code § 28-3904(e), through their "advertisement falsely represent[ing] competitive premium [c]ost as stated throughout herein." Compl. ¶ 75, p. 34. (The Court presumes that the "advertisement" to which the Plaintiff refers throughout the Complaint are the letters sent to the Plaintiff by Wells Fargo Insurance, Plaintiff's Exhibits 2-5.) Count 3C asserts that the QBE Defendants violated D.C. Code § 28-3904(f), which prohibits "fail[ing] to state a material fact if such failure tends to mislead," by "fail[ing] to disclose that the premium suggested was [t]wice the cost of the Plaintiffs' current coverage." Compl. ¶ 75, p. 35. Count 3D alleges a violation of D.C. Code § 28-3904(h), which applies to "advertis[ing] or offer[ing] goods or services without the intent to sell them or without the intent to sell them as advertised," by not seeking competitive bids for the lender-placed insurance policy despite advertising competitive bids. Compl. ¶ 75, p. 35.

Count 3E asserts a violation of D.C. Code § 28-3904(i), which makes it a violation of the D.C. Code to "advertise or offer goods or services without supplying reasonably expected public demand, unless the advertisement or offer discloses a limitation of quantity or other qualifying condition which has no tendency to mislead." Compl. ¶ 75, p. 35. The Plaintiff claims the QBE Defendants violated this provision by omitting from the advertisement "the premium cost it knew would be ultimately charged to Plaintiff." *Id.* The Plaintiff further contends that the QBE Defendants violated this section by "illegally obtain[ing] the forced placed insurance at

10

Plaintiff's expense." *Id.* Count 3F alleges the QBE Defendants also violated D.C. Code § 28-3904(j), which prohibits making false or misleading representations of fact "concerning the reasons for, existence of, or amounts of price reductions, or the price in comparison to price of competitors or one's own price at a past or future time." Compl. ¶ 75, p. 35. The Plaintiff claims the QBE Defendants ran afoul of this section because "Defendants' advertisement represent that the competitive rates may be less that Plaintiff's known premium for the same coverage offered by Defendant, but at all times intended to provide a non-competitive rate twice as much as Plaintiff's existing." *Id.*

Count 3G contends the QBE Defendants violated D.C. Code § 28-3904(k)—that is, the prohibition on falsely stating that services are needed---through "[their] advertisement which indicated that the cost of coverage may be less than Plaintiff's existing coverage, materially suggested replacement coverage with the intent of a more expensive premium." Compl. ¶ 75, p. 36. Count 3H concerns the purported violation of D.C. Code § 28-3904(l), which prohibits a party from falsely stating the reasons for "offering or supplying goods or services at sale or discount price." The Plaintiff asserts the QBE Defendants violated this section because "Defendants actual reasons for offering the coverage was to charge Plaintiff excessive premium rates rather than the advertised competitive rates whether Plaintiff did nor did not respond to the advertisement." Compl. ¶ 75, p. 36.

Count 3I claims the QBE Defendants violated D.C. Code § 28-3904(q), which prohibits failing to provide a "consumer a copy of a sales or service contract . . . or other evidence of indebtedness which the consumer may execute," by failing to obtain the Plaintiff's signature on any documents relating to the lender-placed insurance policy obtained by Wells Fargo Bank. Compl. ¶ 75, p. 36. The Court shall use "Count 3J" to denote the allegation that the QBE

Defendants violated D.C. Code § 28-3904(r), which prohibits making or enforcing "unconscionable terms or provisions of sales or leases." The statute sets forth five factors to take into consideration in applying D.C. Code § 28-3904(r), which the Plaintiff refers to as separate violations of the statute. Compl. ¶ 75, p. 36-38. For purposes of this motion, suffice it to say that the Plaintiff alleges the QBE Defendants violated D.C. Code § 28-3904(r) by obtaining "duplicative" insurance coverage at an "excessive" premium. Compl. ¶ 75, p. 37-38.

The Plaintiff also refers to two non-existent subsections of D.C. Code § 28-3904: "r5.t" and "r.5.u." Compl. ¶ 75, p. 39. Presumably, the Plaintiff is referring to D.C. Code § 28-3904(t) and (u). Subsection (t) prohibits the use of "deceptive representations or designations of geographic origin in connection with goods or services," while subsection (u) prohibits representations that "the subject of a transaction has been supplied in accordance with a previous representation when it has not." The Court shall refer to the purported violations as Counts 3K and 3L, respectively. Count 3K alleges the QBE Defendants violated D.C. Code § 28-3904(t) by deceptively representing in the advertisement that the premium for the lender-placed insurance coverage was competitive. Compl. ¶ 75, p. 39. Count 3L contends the QBE Defendants violated D.C. Code § 28-3904(u) "based on Defendants' advertisement of a competitive rate and the subsequent obtainment of the coverage at a non-competitive rate." *Id.*

In terms of the violation of federal law, Count 3M asserts the QBE Defendants violated the Truth In Lending Act, 15 U.S.C. § 1601 *et seq.*, and Regulation Z, 12 C.F.R. § 226.1 *et seq.*, by (1) failing to disclose the cost of the lender-placed insurance policy until seven months after the effective date; (2) failing to disclose that the binder extended beyond 90 days; and (3) failing to disclose "the terms of payment of the premium." Compl. ¶ 81.

Fourth, Count Four asserts a claim for "fraudulent misrepresentation of material fact and

fraudulent concealment of material fact" against the Wells Fargo Defendants.  *See* Compl. ¶¶ 84-91.  The Plaintiff purports to incorporate all of her previously stated "allegations, duties of care, [and] statutory violations of DC Code Section 28-3904 as if Defendant Wells Fargo was in count three." *Id.* at ¶ 84.  Though far from clear, Count Four appears to contend that the Wells Fargo Defendants violated D.C. Code § 28-3904(e)-(f) and Regulation Z by failing to "disclose all material facts regarding its agreement with QBE First under which QBE First was to obtain unnecessary, duplicative, and non-competitive [l]ender's [f]orced [p]laced [i]nsurance coverage" for the Plaintiff's property, including the "cost of the premium and the method designated for Plaintiff to pay the cost of the premium." Compl. ¶¶ 86-88.

Fifth, the Plaintiff alleges "malicious breach of contract" on the part of the Wells Fargo Defendants.  *See* Compl. ¶¶ 92-95.  Specifically, the Plaintiff alleges the Wells Fargo Defendants breach the Deed of Trust by (1) obtaining lender-placed insurance when the Plaintiff maintained coverage on the property; (2) charging the Plaintiff a non-competitive premium; (3) receiving kickbacks from QBE First.  *Id.* at ¶ 95.

Sixth, the Plaintiff asserts a claim for fraud and conversion against (presumably) all four Defendants.  *See* Compl. ¶¶ 96-102.  Initially, the Plaintiff seems to allege some type of agency relationship between QBE First and one or more of the Wells Fargo Defendants.  *Id.* at ¶ 96; *see also id.* at ¶ 97 ("At all times herein, QBE FIRST was an Agency of an Agent of Defendant Wells Fargo and at all times herein, Defendant Wells Fargo was action as an Agency of an Agent of QBE FIRST.") (all errors in original).  The Plaintiff goes on to assert that

> Defendants at all times herein acted jointly and in concert with the malicious and
> specific intent to Defraud Plaintiff and Class Members of their hard earned money
> through fraudulent obtainment of Lender's forced placed insurance when it had
> actual knowledge that the homeowner, Plaintiff herein, maintained coverage, yet
> they jointly agreed to purchase the duplicative insurance coverage at an excessive
> premium, charge the premium to Plaintiff and share the premium between
> themselves and characterize the sharing as a commission.

*Id.* at ¶ 98.

Seventh and finally, the Plaintiff asserts a claim for "unconscionability" against (presumably) all four Defendants. *See* Compl. ¶¶ 103-111. Count Seven in fact alleges (once again) that the Defendants violated D.C. Code § 28-3904(r) by obtaining lender-placed insurance on the Plaintiff's property, and providing kickbacks to Wells Fargo Bank in the process, in violation of the terms of the Deed of Trust. *Id.* at ¶¶ 103-106.

## II. LEGAL STANDARD

Broadly speaking, the Defendants move to dismiss the Complaint on two grounds: the Court lacks personal jurisdiction over QBE Specialty, and the Complaint fails to state a claim against any of the Defendants.

### A. *Personal Jurisdiction*

Pursuant to Federal Rule of Civil Procedure 12(b)(2), the QBE Defendants move to dismiss all claims against QBE Specialty for lack of personal jurisdiction. The plaintiff bears the burden of establishing a factual basis for asserting personal jurisdiction over a defendant. *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990). "The plaintiff, however, cannot rest on bare allegations or conclusory statements and must allege specific facts connecting each defendant with the forum." *GTE New Media Servs., Inc. v. Ameritech Corp.*, 21 F. Supp. 2d 27, 36 (D.D.C. 1998); *see Second Amend. Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001). "To make such a showing, the plaintiff is not required to adduce evidence that

meets the standards of admissibility reserved for summary judgment and trial; rather she may rest her arguments on the pleadings, 'bolstered by such affidavits and other written materials as [she] can otherwise obtain.'"  *Urban Inst. v. FINCON Servs.*, 681 F. Supp. 2d 41, 44 (D.D.C. 2010) (*quoting Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005)).  When determining whether personal jurisdiction exists over a defendant, the Court need not treat a plaintiff's allegations as true.  Instead, the Court "may receive and weigh affidavits and any other relevant matter to assist it in determining the jurisdictional facts."  *United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 116, 120 n. 4 (D.D.C. 2000) (citation omitted).  Any factual discrepancies with regards to the existence of personal jurisdiction, however, must be resolved in favor of the plaintiff.  *Crane*, 894 F.2d at 456.

> **B.** **Failure to State a Claim**

Federal Rule of Civil Procedure 12(b)(6) provides that a party may challenge the sufficiency of a complaint on the grounds it "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).  Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S. Ct. at 1949.  In deciding a Rule 12(b)(6) motion, a court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint," or "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by [the parties]."

15

*Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (citations

omitted).

## III. DISCUSSION

Before addressing the merits of the Defendants' motions, the Court notes that the

Plaintiff's pleadings in response to the Defendants' motions are rife with new factual allegations

that do not appear in her Complaint.  Many of the new allegations are ultimately irrelevant.  In

any event, the Court emphasizes that the Plaintiff cannot amend her Complaint by including new

allegations in her Oppositions to the Defendants' motions.  *Arbitraje Casa de Cambio, S.A. de*

*C.V. v. U.S. Postal Serv.*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003).  With that in mind, the Court

shall address the pending motions to dismiss.

The Defendants move to dismiss the Complaint on two grounds: (1) the Court lacks

personal jurisdiction over QBE Specialty; and (2) the Complaint fails to state a claim against any

of the Defendants.  The Court shall begin by addressing the question of whether or not the Court

has personal jurisdiction over QBE Specialty.  Next, the Court clarifies the scope of the record

for purposes of the parties motions to dismiss under Rule 12(b)(6).  Finally, the Court shall

address each of the claims raised by the Plaintiff's Complaint.[5]

A.      *Personal Jurisdiction Over QBE Specialty*

For this Court to exercise personal jurisdiction over QBE Specialty, the Plaintiff must

plead facts sufficient to satisfy (1) the District of Columbia's long-arm statute, and (2) the

constitutional requirements of due process.  *GTE New Media Servs. Inc. v. BellSouth Corp.,* 199

---

[5]      Apart from the elements of specific claims, the QBE Defendants also allege the
Plaintiff's Complaint fails to satisfy the general pleading requirements of Federal Rules of Civil
Procedure 8(a) and 9(b).  The Court shall address this argument in the context of the Plaintiff's
individual claims.

F.3d 1343, 1347 (D.C. Cir. 2000); *Edmond v. U.S. Postal Serv. Gen. Counsel*, 949 F.2d 415, 424

(D.C. Cir. 1991) ("Even though subject-matter jurisdiction is here predicated upon a federal

question, [plaintiffs] must rely on D.C. law to sue nonresident defendants, since no federal long-

arm statute applies."). The Plaintiff asserts that the Court has personal jurisdiction over QBE

Specialty pursuant to section (a)(4) of the District of Columbia long-arm statutes, which provides

in pertinent part:

> (a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's—
>
>> (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia[.]

D.C. Code § 13-423(a)(4). The Plaintiff's invocation of section 13-423(a)(4) fails, for several

reasons.

Before reaching the merits of the Plaintiff's claim of personal jurisdiction, the Court

notes that in support of their motion to dismiss, the QBE Defendants submitted a declaration

from Mark Chapman, a Senior Vice President at QBE First. Defs.' Ex. 1 ("Chapman Decl."),

ECF No. [14-2]. The Chapman Declaration indicates QBE Specialty is incorporated in North

Dakota with its headquarters located in New York. *Id.* at ¶ 5. QBE Specialty does not conduct

any lender-placed insurance business in the District of Columbia, and did not write the policy on

the Queen Street property that is the subject of the Plaintiff's claims. *Id.* at ¶¶ 7, 12. QBE

Specialty conducts a limited amount of business in the District of Columbia, relating to "fire,

allied lines, commercial multiple peril, and other liability occurrence insurance." *Id.* at ¶ 7.

Between 2009 and 2011, QBE Specialty collected a total of $9,718 in direct earned premiums

17

from business conducted in the District of Columbia.  *Id.* at ¶¶ 8-10.  "QBE Specialty is not a voluntary insurance carrier who would have written the policy or policies Plaintiff was offered though Wells Fargo Insurance."  *Id.* at ¶ 13.

Turning to the merits of the Plaintiff's argument, the Court notes that the Plaintiff fails to allege—in the Complaint or in her pleadings—what act(s) or omission(s) attributable to QBE Specialty caused tortious injury to the Plaintiff in the District of Columbia, as required by section 13-423(a)(4).   Assuming the Plaintiff has identified the requisite act(s) or omission(s), the Plaintiff fails to show that QBE Specialty "regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia."  D.C. Code § 13-423(a)(4).

The Plaintiff argues that the Chapman Declaration submitted in support of the Defendants' motion to dismiss contradicts an earlier Declaration by Mark Chapman, filed in connection with the QBE Defendants' Notice of Removal.  To establish the potential size of the class for purposes of determining jurisdiction under the Class Action Fairness Act, the QBE Defendants previously submitted a declaration from Mark Chapman stating that

> There are 738 District of Columbia consumers who fall within this putative class as alleged, *i.e.*, Wells Fargo Bank, N.A. borrowers in the District of Columbia who were charged for LPI hazard policies placed by QBE First between March 5, 2009 and March 5, 2012 that were not subsequently cancelled in full.

(First) Chapman Decl., ECF No. [1], at ¶ 7.  The Plaintiff asserts that "[b]y admission, Defendant serviced in three year, 735 District of Columbia Consumers with Lender Placed Insurance." Pl.'s Opp'n to QBE Defs.' Am. Mot. ¶ 1 (all errors in original).  Likewise, the Plaintiff attempts to attribute the revenue from premiums charged for those 738 policies to QBE Specialty.  Pl.'s Opp'n to QBE Defs.' Am. Mot. ¶ 6 (arguing $2,214,000 in premiums from the lender-placed insurance policies is substantial revenue under the long-arm statute).  The Plaintiff's contention

misses the distinction between QBE First, which the Defendants admit places insurance policies for Wells Fargo Bank, Chapman Decl., ECF No. [1], at ¶ 5, and QBE Specialty. The unrefuted evidence before the Court indicates QBE Specialty did not write or place the insurance policy at issue or any lender-placed insurance policies during the class period. Notably, the Plaintiff does not allege that the revenue disclosed in the Second Chapman Declaration constitutes "substantial revenue," as required by section 13-423(a)(4).

Alternatively, the Plaintiff argues that the Court has personal jurisdiction over QBE Specialty because "as an agent of Wells Fargo, wherever Wells Fargo does a regular course of business, Defendant QBE does a regular course of business. QBE is a captive [a]gent for Defendant Wells Fargo." Pl.'s Opp'n to QBE Defs.' Am. Mot. ¶ 1. This argument is illogical. Setting aside the utter lack of evidence to indicate QBE Specialty is an agent of Wells Fargo Bank, the District of Columbia long-arm statue permits the Court to exercise personal jurisdiction over a *principal* who acts "directly or by an *agent*." D.C. Code § 13-423(a). The statute does not purport to authorize the exercise of jurisdiction over an out of state *agent* based on the acts or omissions of the *principal* in the District of Columbia.

As part of her Surreply, the Plaintiff argues that the "functions" of QBE First and QBE Specialty "is a subject for discovery and not for counsel representation [sic] to become fact determination." Pl.'s Surreply ¶ 20. To the contrary, the QBE Defendants do not rely on the representations of counsel, but rather submit a declaration by a Senior Vice President of QBE First in support of their representations regarding the business transacted by QBE Specialty in the District of Columbia. To the extent the Plaintiff's statement might be construed as a request for jurisdictional discovery, the Plaintiff forfeited this argument by failing to raise it in her Opposition. *See Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1001 (D.C. Cir. 2008).

Furthermore, "in order to get jurisdictional discovery a plaintiff must have at least a good faith belief that such discovery will enable it to show that the court has personal jurisdiction over the defendant." *Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1090 (D.C. Cir. 1998). "[A] plaintiff must make a detailed showing of what discovery it wishes to conduct or what results it thinks such discovery would produce." *Atlantigas Corp. v. Nisource, Inc.*, 290 F.Supp.2d 34, 53 (D.D.C. 2003) (citation omitted). "Where there is no showing of how jurisdictional discovery would help plaintiff discover anything new, it [is] inappropriate to subject [defendants] to the burden and expense of discovery." *Id.* (citation omitted). The Plaintiff made no attempt to make the necessary showing that jurisdictional discovery would enable her to show the Court has personal jurisdiction over QBE Specialty, therefore, in its discretion, the Court declines to order jurisdictional discovery.

Ultimately, the Plaintiff does not claim that QBE Specialty's limited business in the District of Columbia constitutes "regularly" doing business or deriving substantial revenue from services rendered in the District of Columbia as required by section 13-423(a)(4). The Court finds the Plaintiff failed to make a sufficient showing that the Court has personal jurisdiction over Defendant QBE Specialty pursuant to section 13-423(a)(4) of the District of Columbia long-arm statute. Therefore the Court shall dismiss all claims against QBE Specialty and need not reach the question as to whether exercising personal jurisdiction over QBE Specialty would comport with due process.

B.     *Relevant Record for the Defendants' Rule 12(b)(6) Motions*

In support of their motion to dismiss, the Wells Fargo Defendants submit a number of exhibits for the Court's consideration. Wells Fargo Defs.' Ex. A (8/1/11 Ltr Wells Fargo Bank to Pl.); Wells Fargo Defs.' Ex. B (9/28/11 Ltr QBE Ins. Corp. to Pl.); Wells Fargo Defs.' Ex. C

(1/10/12 Ltr Wells Fargo Bank to Pl.); Wells Fargo Defs.' Ex. D (3/2/12 Evid. of Property Ins.); Wells Fargo Defs.' Ex. E (3/8/12 Lender Placed Hazard Ins. Flat Cancellation Notice).   The Wells Fargo Defendants contend the Court should consider Wells Fargo's Exhibits A and C because they were mailed to the Plaintiff on the same day as the letters provided in Plaintiff's Exhibits 2 and 4 respectively.   The remaining documents are attached in order to address "omissions" by the Plaintiff.   *See* Wells Fargo Defs.' Mot. at 6, n.4.   The Wells Fargo Defendants cite no authority for the proposition that the Court may consider documents *not* cited by the Complaint simply because they were separately mailed to the Plaintiff, but on the same day as exhibits to the Complaint, or in order to correct "omissions" in the Complaint without converting a motion to dismiss into a motion for summary judgment.   *Cf. Cephas v. MVM, Inc.*, 403 F. Supp. 2d 17, 20 (D.D.C. 2005) (noting the court may consider materials outside the pleadings if the materials were "*referred to in the Complaint*, and are central to the plaintiffs' claims") (quoting *Krooth & Altman v. N. Am. Life Assurance Co.*, 134 F. Supp. 2d 96, 99 (D.D.C. 2001) (emphasis added).   Therefore, in deciding the Defendants' motions to dismiss, the Court does not consider the exhibits attached to the Wells Fargo Defendants' motion.   For the same reason, the Court shall not consider the affidavit of Andrea Cannon attached to the Plaintiff's Opposition to the Wells Fargo Defendants' motion.   Cannon Aff., ECF No. [20-2].

>    C.      *Count One: Breach of Implied Covenant of Good Faith and Fair Dealing as to the Wells Fargo Defendants*

Count One of the Complaint alleges a breach of the implied covenant of good faith and fair dealing with respect to the Deed of Trust by the Wells Fargo Defendants.

> "[A]ll contracts contain an implied duty of good faith and fair dealing, which means that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. If the party to a contract evades the spirit of the contract, willfully renders imperfect performance, or interferes with performance by the other party, he or she may be liable for breach of the implied covenant of good faith and fair dealing."

*Allworth v. Howard Univ.*, 890 A.2d 194, 201 (D.C. 2006) (citations omitted). The Plaintiff alleges the Wells Fargo Defendants breach this implied duty in the Deed of Trust in seven different ways, outlined *supra.*

The Wells Fargo Defendants contend that nothing they did "remotely resembles bad faith or could be characterized as unfair to the Plaintiff." Wells Fargo Defs.' Mot. at 8. First, the Wells Fargo Defendants contend that it was reasonable for them to obtain a temporary lender-placed insurance policy after the Plaintiff failed to respond to their requests to provide proof of voluntary insurance on August 1, 2011, and January 10, 2012. *Id.* at 8-9. Second, the Wells Fargo Defendants assert that they "*never* collected any premiums associated with the temporary placement of LPI or any other charges related to the cancellation thereof." *Id.* at 9. "In short," the Wells Fargo Defendants argue that they "did nothing here that they were not expressly authorized to do in their agreement with the Plaintiff." *Id.* at 9.

The Wells Fargo Defendants' first argument relies on documents outside the record for purposes of a motion to dismiss under Rule 12(b)(6). Moreover, the Wells Fargo Defendants did not submit documents to support their second contention---that is, that the Plaintiff was not charged for any premiums or charges associated with the temporary LPI policy. Rather, the Wells Fargo Defendants point to the statement in the August 31, 2011, and February 9, 2012 letters from Wells Fargo Bank indicating they *would* reimburse any premiums if the Plaintiff's voluntary coverage had not lapsed. In other words, the Wells Fargo Defendants ask the Court to

22

make a factual finding that the Defendants acted in conformance with the representations in their earlier correspondence with the Plaintiff in order to dismiss the Complaint for failing to state a claim. Such factual findings are improper at this stage. Therefore, the Wells Fargo Defendants' motion to dismiss Count One of the Complaint is denied.

>        D.       Count Two: Unjust Enrichment as to All Defendants

Count Two of the Complaint alleges unjust enrichment against all four Defendants. A party asserting a claim for unjust enrichment must show that: "(1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust." *News World Commc'ns, Inc. v. Thompsen*, 878 A.2d 1218, 1222 (D.C. 2005). Unjust enrichment "presuppose that an express, enforceable contract is absent," therefore courts "generally prohibit litigants from asserting these claims when there is an express contract that governs the parties' conduct." *Plesha v. Ferguson*, 725 F. Supp. 2d 106, 112 (D.D.C. 2010) (citing *Vila v. Inter-Am. Inv., Corp.*, 570 F.3d 274, 279 (D.C. Cir. 2009)). The existence of an express contract precludes relief under a quasi-contract the theory of recovery such as unjust enrichment. *Id.*

>        1.       Wells Fargo Defendants

The Wells Fargo Defendants contend that the Plaintiff fails to state a claim for unjust enrichment for two reasons: first, the Plaintiff failed to identify any benefit conferred upon the Wells Fargo Defendants; and second, relief under a theory of unjust enrichment is unavailable because the dispute between the parties is governed by the Deed of Trust. Wells Fargo Defs.' Mot. at 10. With respect to their first argument, the Plaintiff has identified the benefit purportedly conferred upon the Wells Fargo Defendants: the premium applied to her account in connection with the temporary LPI policy. The Defendants may contest the accuracy of this

23

allegation, but that is an issue for discovery not for resolution on a motion to dismiss. However, the Wells Fargo Defendants' second argument has merit. Although some courts permit parties to plead unjust enrichment in the alternative, because the Wells Fargo Defendants do not contest the validity of the underlying contract (the Deed of Trust), there is no reason to maintain a separate claim under a quasi-contract theory of recovery. *See Plesha*, 725 F. Supp. 2d at 112. Thus, the Court shall dismiss Count Two of the Complaint as to the Wells Fargo Defendants.

2. QBE Defendants

The QBE Defendants move to dismiss Count Two on three grounds: first, that the Plaintiff failed to allege that she actually conferred any benefit on the QBE Defendants; second, that the Plaintiff received a benefit in exchange for any payments purportedly made to the QBE Defendants; and third, the Plaintiff's claim fails because it is governed by the Deed of Trust with the Wells Fargo Defendants. QBE Defs.' Am. Mot. at 13-14. The QBE Defendants' first and second arguments depend on factual determinations the Court cannot make at this stage. The Plaintiff alleges that she paid for the LPI policy, but did not receive a benefit because her voluntary insurance coverage never lapsed. The QBE Defendants claim that "Plaintiff either paid for the LPI coverage and received the benefit of the coverage, or in the case of her voluntary insurance coverage never lapsing, Plaintiff did not pay for any LPI coverage, in which case the QBE defendants could not have been unjustly enriched." *Id.* at 14. In other words, the QBE Defendants ask the Court to either ignore the Plaintiff's assertion that there was no lapse in her voluntary coverage, or ignore her claim that she paid the premium associated with the LPI policy. Such factual determinations are inappropriate when faced with a motion to dismiss.

The QBE Defendant's third argument is meritorious. The Plaintiff attempts to avoid the obvious import of her claims by (newly) asserting in her opposition that the benefit received by

the QBE Defendants was "received and otherwise obtained by QBE Defendants through the unilateral 90-Day Insurance Binder issued by QBE Defendants."  Pl.'s Opp'n to QBE Defs.' Am. Mot. ¶ 16.  However, the theory of unjust enrichment necessarily relies on the Plaintiff success on her breach of contract claim against the Wells Fargo Defendants: if the Wells Fargo Defendants were entitled to temporarily obtain LPI coverage under the terms of the Deed of Trust, the payment of the LPI premium (if any), was not unjust.  Therefore, the Court shall dismiss the Plaintiff's unjust enrichment claim against all Defendants.  *See Whting v. Am. Ass'n of Retired Persons*, 637 F.3d 355, 364 (D.C. Cir. 2011) (finding the district court properly dismissed the plaintiff's unjust enrichment claim because "the survival of this claim depends on the validity of her breach of contract or statutory claim").

E.      *Counts Three and Four: Fraudulent Material Misrepresentation, Fraudulent Concealment, and Fraudulent Omission of Material Facts as to All Defendants*

Counts Three and Four purport to allege a number of claims against all four Defendants which broadly fall under the umbrella of fraud.  In light of the ambiguity of the use of the term "Defendant" by the Plaintiff, and the Plaintiff's attempt to incorporate the entirety of Count Three into Count Four, the Court assumes for purposes of this motion that the Plaintiff intends to bring all claims in Counts Three against all Defendants.  The Court also notes that Count 3J is duplicative of the allegations in Count Seven, so the Court shall address Count 3J *infra* in section III.F.[6]  The Court shall address the Plaintiff's allegations of common law fraud, statutory violations of the CPPA, and violations of the Truth In Lending Act in turn.

---

[6] Because the Plaintiff fails to state a claim for fraud against the QBE Defendants, it would be premature for the Court to address the QBE Defendant's contention that claims arising from the purportedly excessive LPI policy are barred by the filed rate doctrine.

1.    Common Law Fraud

Count 3A (as labeled by the Court), alleges the Defendants fraudulently promised the Plaintiff that she might qualify for competitive insurance rates, concealed the cost of the LPI policy for seven months, and represented that the Plaintiff did not maintain voluntary insurance coverage on the Queen Street property.  Compl. ¶ 74(5)-(6).  To succeed on a claim for fraud, the Plaintiff must establish: (1) that the defendant made a false representation or willful omission of a material fact; (2) that the defendant had knowledge of the misrepresentation or willful omission; (3) that the defendant intended to induce the plaintiff to rely on the misrepresentation or willful omission; (4) that the plaintiff actually relied on that misrepresentation or willful omission; and (5) that the plaintiff suffered damages as a result of his reliance.  *Schiff v. Am. Ass'n of Retired Persons*, 697 A.2d 1193, 1198 (D.C. 1997).  "In alleging fraud . . . a party must state *with particularity* the circumstances constituting fraud," though "[m]alice, intent, knowledge and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b) (emphasis added).  The Wells Fargo and QBE Defendants each contend that the Plaintiff failed to plead common law fraud with sufficient particularity.

Ultimately, the Court need not reach the sufficiency of the Plaintiff's allegations regarding the purported fraudulent statement or omissions, because the Plaintiff fails to allege that she relied on the fraudulent statements or omissions.  To the contrary, the Plaintiff specifically asserts that she did *not* rely on the statements in the advertisements from Wells Fargo Insurance indicating that she may be eligible for more competitive insurance rates. Compl. ¶ 75 (stating that the "Plaintiff did not respond to the advertisement").  The Plaintiff does not claim that she relied on the Defendants' failure to disclose the cost of LPI premium in any manner.  The Plaintiff fails to allege what action she took in response to Wells Fargo Bank's

August 31, 2011, letter—which she admits she received—indicating it was obtaining the LPI

policy, or how that action might have changed if the binder had been attached to that letter.

Finally, the Plaintiff does not claim she took any action based on the QBE Defendants'

representation that the Plaintiff did not have voluntary insurance coverage on the Queen Street

property.    Quite the opposite, the Plaintiff alleges that the *Defendants* relied on that

representation "to obtain force-placed insurance on the Plaintiff's property."  Compl. ¶ 74(5)(d).

Absent allegations that she relied on any of the Defendants' fraudulent misrepresentations or

omissions, the Plaintiff's claim(s) for common law fraud shall be dismissed.[7]

2.      <u>District of Columbia Consumer Protection Procedures Act</u>

a.      *Plaintiff Failed to Sufficiently Plead a Consumer Transaction*

As an initial matter, the Defendants contend the Plaintiff fails to state a claim under the

CPPA because the Plaintiff failed to plead facts demonstrating her claims arise out of a consumer

transaction.  Wells Fargo Defs.' Mot. at 15.  "The purpose of the CPPA is to protect consumers

from a broad spectrum of unscrupulous practices by merchants, therefore the statute should be

read broadly to assure that the purposes are carried out."  *Modern Mgmt. Co. v. Wilson*, 997 A.2d

37, 62 (D.C. 2010).    However, the act applies only to consumer-merchant relationships.

*Snowder v. District of Columbia*, 949 A.2d 590, 599 (D.C. 2008) (observing that the CPPA "was

designed to police trade practices arising only out of consumer-merchant relationships").

---

[7]  In her Opposition, the Plaintiff did not respond to the QBE Defendants' argument that fraudulent concealment is not a cause of action, but rather an equitable doctrine used to toll a statute of limitations, which is not an issue in this case.  QBE Defs.' Am. Mot. at 18-19. Therefore, to the extent the Complaint can be construed to allege fraudulent concealment, the QBE Defendants' motion to dismiss those allegations is granted as conceded.  *Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F.Supp.2d 15, 25 (D.D.C.2003) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").

> The CPPA defines "consumer" both as a noun and an adjective. In relevant part, the noun "consumer" means "a person who does or would ... receive consumer goods or services," D.C. Code § 28-3901(a)(2), or "a person who does or would provide the economic demand for" "any act which does or would create, alter, repair, furnish, make available, provide information about, or, directly or indirectly, solicit or offer for or effectuate, a sale, lease or transfer, of consumer goods or services," *id*. § 28-3901(a)(2), (6). When used as an adjective, as in the phrase "consumer goods," the word means "primarily for personal, household, or family use." *Id*. § 28-3901(a)(2). We read these provisions together to define "consumer" as a person who receives or demands goods or services that are primarily for personal, household, or family use.

*Shaw v. Marriott Int'l, Inc.*, 605 F.3d 1039, 1043 (D.C. Cir. 2010).

"[T]he statute does not reach transactions intended primarily to promote business or professional interests." *Shaw*, 605 F.3d at 1043.  In other words, if an individual purchases what might otherwise be considered a consumer good but does so for business reasons, that transaction is not subject to the CPPA.  For example, a cab driver's purchase of gasoline is not subject to the CPPA if it was made "in connection with his role as an independent businessman," rather than primarily for personal use.  *See Ford v. Chartone, Inc.*, 908 A.2d 72, 84, n.12 (D.C. 2006) (citing *Mazanderan v. Indep. Taxi Owners' Ass'n, Inc.*, 700 F. Supp. 588, 591 (D.D.C. 1988)).  In *Shaw*, the plaintiff sought to bring claims under the CPPA against the Marriott hotel chain for overcharging customers.  605 F.3d at 1041.  The D.C. Circuit held that because the plaintiffs stayed at hotels "to further the business purposes of their employers[,] [t]hey did not engage in consumer transactions within the meaning of the Act and are not entitled to its protections." *Id.* at 1044.

Here, the Defendants note that the Plaintiff operates a day care out of the Queen Street property, thus any insurance obtained for the property is primarily for business purposes and outside the scope of the CPPA.  *See* Pl.'s Ex. 9 (identifying "occupancy" of the Queen Street property as a day care).  The Plaintiff's insurance policy from Great American Insurance for the

Queen Street property included coverage for "commercial property," "commercial general liability," and "commercial equipment breakdown." Pl.'s Ex. 9-A. Citing the CPPA definitions, the Plaintiff argues that "[t]he premium cost is a consumer debt, the insurance policy is a consumer product, the force placement of the insurance was a consumer transaction." There may be cases in which the purchase of an insurance policy is a consumer transaction within the scope of the CPPA, but this argument overlooks the fact that the purpose in obtaining the insurance policy affects the applicability of the CPPA. The Plaintiff does not directly address to this issue, except to say that "the placement of the coverage was on a residential dwelling in which Plaintiff's daughter resides." Pl.'s Opp'n to Wells Fargo Defs.' Mot. at 23. This allegation does not appear in the Complaint. The CPPA claims in the Complaint arise out of an insurance policy obtained in connection with the Plaintiff's business. The Plaintiff failed to allege facts sufficient to show her CPPA claims arise from a consumer transaction, therefore all of Plaintiff's CPPA claims shall be dismissed.

> b.    *The Plaintiff Failed to Plead Specific Violations of the CPPA*

The Court shall dismiss all of Plaintiff's claims brought under the CPPA for failure to plead a consumer transaction. Nevertheless, the Court shall address the QBE Defendants' separate contention that the individual violations of the CPPA identified in the Complaint fail to state claims for relief. For the reasons set forth below, the Court finds that all but two of the independent CPPA violations contained in the Complaint fail to state a claim.[8]

Under the CPPA, a company may not misrepresent "a material fact which has a tendency

---

[8]    The QBE Defendants do not specifically address Count 3I, which alleges the Defendants failed to comply with the requirements with section 28-3904(q). This claim shall be dismissed with the Plaintiff's other CPPA claims for failure to allege a consumer transaction, but there is no basis for alternatively dismissing this specific count for failure to state a claim.

to mislead," or fail to state a material fact "if such failure tends to mislead.  D.C. Code § 28–3904(e), (f).  This prohibition applies, "whether or not any consumer is in fact misled, deceived or damaged thereby[.]"  *Id.* at § 28-3904(a).  "A person bringing suit under [sections (e) and (f)] need not allege or prove intentional misrepresentation or failure to disclose to prevail on a claimed violation, [but] must allege a material fact that tends to mislead."  *Grayson v. AT&T Corp.*, 15 A.3d 219, 251 (D.C. 2011).  "[A] claim of an unfair trade practice [under the CPPA] is properly considered in terms of how the practice would be viewed and understood by a reasonable consumer."  *Pearson v. Chung*, 961 A.2d 1067, 1075 (D.C. 2008).

Count 3B of the Complaint alleges a violation of section (e) of the CPPA based on the statement in the letters from Wells Fargo Insurance company that the Plaintiff "*may* be eligible for [i]mproved coverage compared to your current homeowners or property insurance."  Pl.'s Exs. 2-5 (emphasis added).  "Opinions or predictions of future events do not constitute representations of material fact upon which a plaintiff successfully may place dispositive reliance."  *Howard v. Riggs Nat'l Bank*, 432 A.2d 701, 706 (D.C. 1981).  The letters from Wells Fargo Insurance simply offers the prediction that the Plaintiff might be able to obtain a more competitive rate if she were to contact Wells Fargo Insurance.  This prediction is not a representation of material fact upon which the Plaintiff can base a claim under the CPPA.  Accordingly, the Court shall dismiss Count 3B failure to state a claim.

Count 3C alleges the Defendants failed to state a material fact by failing to disclose that "the premium suggested was [t]wice the cost of Plaintiffs' current coverage."  Compl. ¶ 75, pp. 34-35.  However, the Plaintiff fails to allege that this omission was in anyway misleading to a reasonable consumer.  The Plaintiff does not need to allege that she was in fact misled by the omission, but in the absence of any allegations as to how she responded to the February 9, 2012

30

binder—or how she would have responded absent the purportedly misleading omission—there are no allegations in the Complaint that the omission was in fact misleading to anyone, much less a reasonable consumer.

Counts 3D, 3E, 3F, and 3H allege the Defendants violated subsections (h), (i), (j), and (l) of the CPPA based on purported differences between the advertisements from Wells Fargo Insurance and the terms of the LPI policy obtained for the Queen Street property.  However, the Plaintiff fails to allege that the Defendants ever advertised that lender-placed insurance obtained under the terms of the Deed of Trust would be sought through a competitive process.  The Plaintiff does not identify any advertisements issued in relation to the lender-placed insurance that might have violated this section of the CPPA, therefore the Court agrees with the QBE Defendants that these counts fail to state a claim for relief.

Count 3G contends the QBE Defendants violated D.C. Code § 28-3904(k) merely by suggesting that the Plaintiff might be able to obtain less expensive coverage.  Compl. ¶ 75, p. 36. Facially the advertisement did not state that services were *needed*, just that less expensive services might be available.  Count 3K alleges the QBE Defendants violated D.C. Code § 28-3904(t) by deceptively representing in the advertisement that the premium for the lender-placed insurance coverage was competitive, but D.C. Code § 28-3904(t) applies only to "deceptive representations" of "*geographic origin*."  Count 3L alleges the QBE Defendants violated D.C. Code § 28-3904(u) based on the allegedly excessive premium for the LPI policy, but subsection (u) applies only to representations that "the subject of a transaction has been supplied in accordance with a previous representation when it has not."  Therefore, the Court shall dismiss Counts 3B-H and 3K-L for failing to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

3.      Truth In Lending Act and Regulation Z

Count 3M and Count Four allege that the Defendants violated the Truth In Lending Act and Regulation Z by failing to disclose certain terms of the LPI policy.  Compl. ¶¶ 81, 86-88. The Plaintiff's allegations regarding the Truth In Lending Act and Regulation Z are woefully inadequate.  Simply asserting that the Defendants violated the statute and regulation in their totality, without more, fails to "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  This is particularly true with respect to the QBE Defendants who facially do not fall within the scope of the statute or Regulation Z for purposes of this case.  *See* 15 U.S.C. § 1602(g) (defining "creditor"); 12 C.F.R. § 1026.1(c) (limiting the application of Regulation Z to parties that extend credit and meet four specific criteria).  Therefore, the Court shall dismiss Count 3M and Count Four.

F.      *Count Five: Malicious Breach of Contract as to the Wells Fargo Defendants*

Count Five of the Complaint alleges the Wells Fargo Defendants breached the Deed of Trust by (1) obtaining lender-placed insurance when the Plaintiff maintained coverage on the property; (2) charging the Plaintiff a non-competitive premium; (3) receiving kickbacks from QBE First.  Compl. ¶ 95.  To state a claim for breach of contract, the Plaintiff must allege: "(1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach."  *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009).  The Wells Fargo Defendants contend that none of the purported breaches identified by the Plaintiff are sufficient to state a claim

Initially, the Wells Fargo Defendants argue that obtaining the LPI policy was not a breach of the Deed of Trust because "there was no permanent duplicative insurance in force." Wells Fargo Defs.' Mot. at 13.  This argument is misplaced, for several reasons.  First, based on

the record for purposes of this motion, the Court cannot conclude that "the temporary LPI policy was cancelled as though it never existed" as the Wells Fargo Defendants contend. *Id.* Second, even if the LPI policy was only temporary, this argument does not refute the existence of a breach, but rather goes to the extent of the Plaintiff's damages from the breach.

With respect to the second and third breaches articulated in the Complaint, the Wells Fargo Defendants contend these allegations are insufficient because the Plaintiff was never charged any premium, which by definition means there was no kickback payment. Once again, this contention relies on the Court making a factual finding regarding whether or not the Plaintiff was charged (even temporarily) for the LPI policy premium, which is not the function of the Court in deciding a motion to dismiss.

However, the Wells Fargo Defendants' final argument regarding Count Five has merit. Specifically, the Defendants argue that they did not breach the Deed of Trust by charging a "non-competitive" premium in connection with the LPI policy because the Deed of Trust indicated that the cost of an LPI policy obtained by lender "might significantly exceed the cost of insurance" the Plaintiff could independently obtain. In other words, the Plaintiff failed to identify any duty or obligation in the Deed of Trust that would require the Wells Fargo Defendants to obtain competitively priced LPI coverage for the property at issue. Moreover, the Plaintiff failed to identify any duty in the Deed of Trust that would bar the Wells Fargo Defendants from receiving the alleged "kickbacks." Therefore, the Court shall dismiss Count Five of the Complaint only as to the allegation that the Wells Fargo Defendants breached the Deed of Trust by charging the Plaintiff a non-competitive premium for the LPI policy or by receiving kickbacks.

G.    *Count Six: Fraud and Conversion as to All Defendants*

Count Six of the Complaint, labeled a claim for fraud and conversion, alleges:

> Defendants at all times herein acted jointly and in concert with the malicious and specific intent to Defraud Plaintiff and Class Members of their hard earned money through fraudulent obtainment of Lender's forced placed insurance when it had actual knowledge that the homeowner, Plaintiff herein , maintain coverage, yet they jointly agreed to purchase the duplicative insurance coverage at an excessive premium , charge the premium to Plaintiff and share the premium between themselves and characterize the sharing as a commission. From the transaction, Plaintiff gets absolutely nothing. Defendants, who are not legally entitled to the premium payment provided directly to them by Plaintiff, accepts the money – premium – as their own money and use the money for their individual purpose.

Compl. ¶ 98 (all errors in original).

As a general principle, conversion is defined as "'any unlawful exercise of ownership, dominion or control over the personal property of another in denial or repudiation of [her] rights thereto.'"  *Council on Am.-Islamic Relations v. Gaubatz*, 667 F. Supp. 2d 67, 78 (D.D.C. 2009) (quoting *Chase Manhattan Bank v. Burden*, 489 A.2d 494, 495 (D.C. 1985)).  "Money can be the subject of a conversion claim only if the plaintiff has the right to a specific identifiable fund of money.  A cause of action for conversion, however, may not be maintained to enforce a mere obligation to pay money."  *Curaflex Health Servs., Inc. v. Bruni*, 877 F. Supp. 30, 32 (D.D.C. 1995) (citations omitted).

The Plaintiff does not allege that the Defendants exercised unlawful control over her personal property, nor does she articulate a right to any specific identifiable fund of money.  The Plaintiff fails to state a claim for conversion.  Moreover, this claim does not state an independent basis for a charge of fraud, apart from that plead in Counts Three and Four.  Accordingly, the Court shall dismiss Count Six of the Complaint as to all Defendants.

H.    *Count Seven: Unconscionability as to All Defendants*

Citing to Section 28-3904(r) of the D.C. Consumer Protection Procedures Act, the

34

Plaintiff alleges in Count Seven and Count 3J that "Plaintiff's Mortgage Contract contained no provisions that allowed Defendants to force place Lender's Insurance upon Plaintiff's property were [sic] maintained voluntary insurance coverage on the collateral property," and "Defendants [sic] decision to force place coverage on the already insured property at twice the cost of Plaintiff's identical coverage was not provided by the terms of the contract."  Compl. ¶¶ 104-05.

Section 28-3904(r) of the D.C. Code provides for a violation of the consumer protection statute to "make or enforce unconscionable terms or provisions of sales or leases."  Courts have found this section applies to claims alleging that the terms of a mortgage agreement are unconscionable.  *E.g.*, *Williams v. First Gov't Mortg. & Investors Corp.*, 225 F.3d 738 (D.C. Cir. 2000); *Hughes v. Abell*, 867 F. Supp. 2d 76 (D.D.C. 2012).  However, Count Seven of the Complaint does not allege that the terms of the Deed of Trust with Wells Fargo Bank are unconscionable.  Rather, the Plaintiff specifically alleges that the parties took certain "unconscionable" *acts* that were *not* authorized under the terms of the mortgage agreement. Section 28-3904(r) creates a cause of action for making or enforcing "unconscionable terms or provisions" of an agreement, not arguably unconscionable acts purportedly performed in *violation* of the terms of an agreement.  For this reason, the Plaintiff fails to state a claim under Section 28-3904(r).

In her opposition, the Plaintiff attempts to argue that "[t]he 90 Day Binder which QBE placed on Plaintiff's property through the LPI constituted a contractual relationship between QBE and Plaintiff," and that "[t]he Unconscionability is the deceptive nature of the contract. The contract represents a 90-Day binder and hides the yearly cost of the premium."  Pl.'s Opp'n at ¶ 65.  At no point in Count Seven does the Plaintiff identify the 90-day binder as the contract containing terms she challenges as unconscionable, and she cannot amend her Complaint by

35

articulating new allegations in her response to a motion to dismiss.  *Arbitraje Casa de Cambio, S.A. de C.V.*, 297 F. Supp. 2d at 170.  Therefore, the Court shall dismiss Count Seven and Count 3J of the Complaint for failure to state a claim.[9]

  I.   *Plaintiff's Request for Leave to Amend*

  At the conclusion of his Opposition to the QBE Defendants' motion, the Plaintiff stated that "[t]o the extent they may in some areas fall short, Plaintiff seek[s] leave of court to amend the complaint to conform to newly acquired evidence and for the complaint to conform to the evidence."  Pl.'s Opp'n to QBE Defs.' Am. Mot. ¶ 69.  "[A] bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought—does not constitute a motion [to amend] within the contemplation of Rule 15(a)."  *Confederate Mem'l Ass'n, Inc. v. Hines*, 995 F.2d 295, 299 (D.C. Cir. 1993).  Additionally, the Plaintiff's request fails to satisfy the procedural requirements for motions set forth in Local Civil Rule 7.  "This requirement is no mere formality.  In the absence of a proposed pleading, neither the opposing party nor the district court is in a position to determine whether or not [the] proposed amendments would be futile."  *Kim v. United States*, 840 F. Supp. 2d 180, 190 (D.D.C. 2012) (citation omitted).  "[T]he failure to include the proposed pleading with a motion to amend is a sufficient basis for denying the motion."  *Id.*  Absent a formal motion conforming to the requirements of the Local Civil Rules and the Federal Rules of Civil Procedure, including a proposed amended complaint, the Court shall not entertain the Plaintiff's cursory motion to

---

[9] In a footnote, the Wells Fargo Defendants contend that the Plaintiff's claims under the D.C. Consumer Protection Procedures Act are barred by the three-year statute of limitations. Wells Fargo Defs.' Mot. at 16, n.6.  However, the Wells Fargo Defendants offer no authority for the proposition that a claim under section 28-3904(r) accrues at the time the parties enter into the contract, as opposed to the time at which a party attempts to enforce the allegedly unconscionable term.  Therefore, the Court declines to dismiss the Plaintiff's statutory claim of unconscionability on the alternative ground that it is untimely.

amend her complaint.

## IV.  CONCLUSION

All four of the named Defendants moved to dismiss the entirety of the Complaint.  The Plaintiff failed to show the Court has personal jurisdiction over Defendant QBE Specialty, therefore all claims against this Defendant shall be dismissed.  The Complaint sufficiently alleges a breach of the implied covenant of good faith and fair dealing as to the QBE Defendants. Relief under a quasi-contract theory is unavailable because the Plaintiff's claims are contingent on finding a breach of the terms of an express contract with the Wells Fargo Defendants.  The Plaintiff failed to allege reliance on any purported misrepresentations or omissions, and thus fails to state a claim for common law fraud.  The Complaint lacks factual allegations to show that the state law consumer protection claims arise out of a consumer transaction, and further fails to state a plausible claim for relief under federal law.  A claim for conversion is unavailable because the Plaintiff's allegations concern only the payment of money.  Finally, the Plaintiff's allegations that the Defendants performed unconscionable acts do not state a claim for relief under the state law prohibiting unconscionable terms in a contract.  Accordingly, the QBE Defendants' Amended Motion to Dismiss is GRANTED and the Wells Fargo Defendants' Motion to Dismiss is GRANTED IN PART and DENIED IN PART.  An appropriate Order accompanies this Memorandum Opinion.

_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE