UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANDREA CANNON, *on behalf of herself and all other similarly situated*,

    Plaintiff,

        v.

WELLS FARGO BANK, N.A., *et al.*,

    Defendants.

Civil Action No. 12-465 (CKK)

## MEMORANDUM OPINION
(July 1, 2013)

Plaintiff Andrea Cannon filed a putative class action suit against Defendants Wells Fargo Bank, N.A. and Wells Fargo Insurance, Inc., (collectively the "Wells Fargo Defendants"), as well as QBE Specialty Insurance Co. and Sterling National Insurance Agency, Inc., now known as QBE First Insurance Agency, Inc. ("QBE First"), in the Superior Court for the District of Columbia. The Defendants removed the action to this Court and upon the Defendants' respective motions to dismiss, dismissed all claims except for portions of the Plaintiff's breach of contract claim against the Wells Fargo Defendants. Presently before the Court is the Plaintiff's [34] Motion for Leave to File an Amended Complaint against the Wells Fargo Defendants, QBE First, and a new defendant, QBE Insurance Company (with QBE First, the "QBE Defendants"). Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as a whole, the Court finds that with the exception of the proposed amendments to the Plaintiff's breach of contract claim, which the Wells Fargo Defendants do not oppose, the Plaintiff's proposed

---

[1] Pl.'s Am. Mot. for Leave to File Am. Compl. ("Pl.'s Mot."), ECF No. [34]; Wells Fargo Defs.' Opp'n, ECF No. [36]; QBE Defs.' Opp'n, ECF No. [37]; Pl.'s Reply, ECF No. [40].

amendments would not survive a motion to dismiss, and thus amending the Complaint would prove futile. Accordingly, the Plaintiff's motion is GRANTED IN PART and DENIED IN PART. The Plaintiff may amend her breach of contract claim as proposed in the Amended Complaint, but otherwise the Plaintiff's request for leave to amend is DENIED.

## I. BACKGROUND

For purposes of the Plaintiff's motion, the Court presumes the well-pleaded factual allegations in the Plaintiff's proposed Amended Complaint are true.[2] The Court notes that the Plaintiff's proposed Amended Complaint includes a number of extraneous factual allegations, but the factual summary set forth below addresses only those allegations relevant to the disposition of the Plaintiff's motion. Moreover, the Plaintiff's motion for leave to amend at various points contains new or different allegations than those set forth in the proposed complaint. The Court's analysis is based solely on the allegations set forth in the proposed Amended Complaint. *See Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003).

### A.   *Factual Allegations*

The Plaintiff obtained a mortgage from Wachovia Bank, predecessor in interest to Defendant Wells Fargo Bank, on property located at 1235 Queen Street, Northeast, Washington, D.C., 20002, in December 2007. Am. Compl., ECF No. [34-1], ¶ 9; Pl.'s Ex. 10, ECF No. [34-13] (Deed of Trust) at 1. The Deed of Trust indicates that if the borrower fails to maintain sufficient insurance coverage on the mortgaged property, the lender "may obtain insurance

---

[2] The Plaintiff sought to amend her original complaint in response to the Defendants' motions to dismiss, but subsequently withdrew the amended complaint. 2/28/13 Order, ECF No. [28]. Accordingly, the Court refers to the complaint the Plaintiff now seeks leave to file as the proposed Amended Complaint.

coverage, at Lender's option and Borrower's expense," and "the cost of the insurance coverage so obtained might significantly exceed the cost of insurance" that the borrower might have obtained. Pl.'s Ex. 10 ¶ 5. The Deed of Trust further provides that the amount of the premium(s) paid by Wells Fargo Bank to obtain coverage under this provision "shall become additional debt of Borrower," and "shall bear interest at the rate applicable" to the mortgage. *Id.*; Am. Compl. ¶¶ 11-12. Between July 16, 2005, and July 16, 2008, the Plaintiff maintained property and liability insurance on the Queen Street property through Scottsdale Insurance Company. Am. Compl. ¶ 18; Pl.'s Ex. 1, ECF No. [34-4] (2/16/12 Ltr. Old Dominion Ins. Agency to Pl.). From July 16, 2008 through at least February 16, 2012, Great American Insurance Company provided commercial property and liability insurance coverage for the Queen Street property. Am. Compl. ¶ 18; Pl.'s Ex. 1; *see also* Pl.'s Ex. 9-A, ECF No. [34-12] (Great Am. Ins. Co. Policy Decl.) (reflecting coverage of Queen Street Property from July 16, 2011 until July 16, 2012).

    1.  <u>Correspondence from the Wells Fargo Defendants</u>

On August 31, 2011, the Plaintiff received a letter from Wells Fargo Bank, which stated in relevant part:

> Previously we wrote to inform you that we did not have evidence of homeowners/hazard insurance coverage to protect your property per the terms of your [Deed of Trust]. We requested that you provide current evidence of homeowners/hazard insurance coverage to us. We have not received a homeowners/hazard policy covering your dwelling.
>
> Therefore, Wells Fargo Bank N.A., has secured temporary insurance coverage in the form of a binder effective as of [July 16, 2011]. This insurance is provided by QBE Insurance Corporation. This binder cannot be renewed.

Pl.'s Ex. 6, ECF No. [34-9], (8/31/11 Ltr. Wells Fargo Bank to Pl.) at 1; Am. Compl. ¶ 40. The letter indicated that the Plaintiff had the right to purchase insurance from the company of her

choice, and that if she already had coverage on the property, she could submit that information to Wells Fargo Bank. Pl.'s Ex. 6 at 1. Moreover, "[u]pon prompt receipt of your policy, this binder will be cancelled. There is no charge to you if there has been no lapse in coverage." *Id.* With respect to the temporary insurance coverage Wells Fargo had obtained on the property, the letter stated that "[t]he full year premium for this policy is shown on the enclosed binder. This premium will be advanced by Wells Fargo Bank, N.A. and will be added as a fee to your account." *Id.* The Plaintiff does not indicate whether a copy of the binder was attached to the August 31, 2011, letter.

The letter went on to indicate that "[i]n nearly all instances, the insurance coverage we obtain may be more expensive than a policy you could obtain from an agent or insurance company of your choice." Pl.'s Ex. 6 at 2. The letter further disclosed that "[t]he insurance we obtain will be arranged by Wells Fargo Insurance, Inc., a licensed insurance agency and an affiliate of Wells Fargo Bank, N.A. Wells Fargo Insurance, Inc. will receive a commission on the insurance we obtain. Wells Fargo Bank, N.A., is not affiliated with the insurance company." *Id.* The Plaintiff's Amended Complaint does not indicate how she responded to the August 31, 2011 letter, if at all. QBE First informed the Plaintiff on September 28, 2011, that at Wells Fargo Bank's request, the LPI was cancelled effective July 16, 2011—the day on which the policy issued. 9/28/11 Ltr. QBE Ins. Corp. to Pl., ECF No. [10-2].[3]

The Plaintiff received a substantively identical letter to the August 31, 2011, letter from

---

[3] The cancellation notices dated September 28, 2011, and March 8, 2012, were attached to the Wells Fargo Defendants' Motion to Dismiss but were not attached as exhibits to the proposed Amended Complaint. Because the Complaint specifically relies on the Cancellation Notices to show purportedly fraudulent acts by QBE First, Am. Compl. ¶ 103, the Court may consider these documents in determining whether the proposed amendments would survive a motion to dismiss. *See Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011).

Wells Fargo Bank on February 9, 2012. Pl.'s Ex. 7, ECF No. [34-10] (2/9/12 Ltr. Wells Fargo Bank to Pl.). Attached to the letter was a 90-day binder from QBE Insurance Corporation,[4] disclosing a premium of $3,064.32. Am. Compl. ¶ 41; Pl.'s Ex. 8, ECF No. [34-11]. The binder indicated the "policy term" ran from July 16, 2011, until July 16, 2012, and stated that

> [W]e have secured temporary coverage in the form of a 90-day binder through the Company shown above and you will be charged for the policy premium. This binder covers the described property for risks of direct loss subject to the terms, conditions, and limitations of the policy in current use by the company. If evidence of acceptable coverage is received during this binder period, you will be charged only for any lapse in coverage. This coverage will be cancelled back to the original effective date, with no premium charge applying, if you provide coverage effective on or before the effective date of this binder.

Pl.'s Ex. 8. The Plaintiff notes that the premium for the 90-day binder from QBE Insurance Corp., if applied to a 12-month policy, exceeded the premium charged by Great American Insurance by $6,487.28. Am. Compl. ¶¶ 41-44; *cf.* Pl.'s Ex. 8 *with* Pl.'s Ex. 9-A. The Defendants previously suggested that despite the "90-day" moniker, $3,064.32 represented the yearly premium for the policy. Wells Fargo Defs.' Reply, ECF No. [19] at 3 n.2; QBE Defs.' Reply, ECF No. [22] at 5-6. The parties (and the Court) generally refer to the policy reflected in the 90-day binder as the "force-placed," "lender-placed," or "LPI" policy. QBE First informed the Plaintiff on March 8, 2012, that at Wells Fargo Bank's request, the LPI was cancelled effective July 16, 2011. 3/8/12 Ltr. QBE Ins. Corp. to Pl., ECF No. [10-5]. However, the Plaintiff alleges that she "has received no indication of premium reimbursement." Am. Compl. ¶ 49.

Much of the Plaintiff's Amended Complaint is concerned with a document the Plaintiff

---

[4] The Plaintiff alleges that "QBE Insurance Corporation is the same as QBE First[] Insurance Agency, Inc., the real party in interest." Am. Compl. at 1 n.1. The QBE Defendants do not explain the relationship between QBE Insurance and QBE First except to say that "[t]he allegations against QBE Insurance are futile for the same reasons as the allegations against QBE F[irst] are futile." QBE Defs.' Opp'n at 2 n.2.

refers to as the "Certificate."  The document, which the Plaintiff attached to the proposed Amended Complaint as Exhibit A, is entitled "Additional Named Insured Certificate," and lists Wells Fargo Bank as the "named insured mortgagee," and the Plaintiff as the "additional named insured" for an insurance policy on the Queen Street property.  Pl.'s Ex. A, ECF No. [34-14]. The Certificate indicates the dwelling is insured for $305,364, and discloses a premium of $2,778.81 for a policy term from February 15, 2010, to February 15, 2011.  *Id.*  Although the face of the document indicates policy did not cover any personal property or personal liability, the Plaintiff alleges that the certificate "does not represent Defendant's [c]ollateral [i]nterest[,] [r]ather, it protects Plaintiff's personal property.  Am. Compl. ¶ 57.  Accordingly, the Plaintiff refers to the Additional Named Insured Certificate as "non-collateral coverage" precluded by paragraph five of the Deed of Trust, which purportedly authorizes only the "placement of collateral coverage."  Id. at ¶¶ 17, 22-24.  Based on her recent "discovery" of this Certificate, the Plaintiff alleges "there are other LPI [p]olicies procured and placed" on the Queen Street property.  *Id.* at ¶ 13.

        2.    The "Kickback" Scheme

The Plaintiff alleges that the Defendants have engaged in a "kickback" scheme by obtaining LPI pursuant to Deeds of Trust entered into by Wells Fargo Bank even though the borrowers maintain adequate insurance coverage on the mortgaged property.  Specifically, the Plaintiff alleges that Wells Fargo Bank permits QBE First to search its "data base [sic]" to determine the identity of homeowners whose property is mortgaged by Wells Fargo Bank.  Am. Compl. ¶ 19. Wells Fargo Bank purportedly then authorizes QBE First to issue LPI policies for the property at issue, and Wells Fargo Bank then adds the cost of the premiums to each borrower's principal debt, which may be reflected in the monthly mortgage statement and are

shown in the ultimate mortgage "payoff statement." *Id.* at ¶¶ 2(a), 30.[5] QBE First then allegedly issues the LPI and Additional Named Insured Certificate, but does not provide notice to the borrower that the LPI will be issued until after the fact. *Id.* According to the Plaintiff, "[f]orty (40%) percent of the premium is paid to QBE as kickbacks disguised as commission, and 60% of the premium, at some later point, is given back to Wells Fargo." *Id.* at ¶ 2(a). The plaintiff alleges that in 738 cases between March 5, 2009, and March 5, 2012, QBE First placed LPI policies on property for which the borrowers maintained adequate insurance coverage, but the Wells Fargo Defendants did not subsequently refund the premiums in full once proof of coverage was provided. *Id.* at ¶ 4. The Plaintiff asserts that "QBE First does nothing to assist in finding the LPI for competitive premium purposes," and its sole purpose is to issue the LPI "at an excessive premium rate to create profit to be shared between Wells Fargo and QBE." *Id.* at ¶ 37.

    B.    *Specific Claims*

The Plaintiff purports to bring this action on behalf herself and a class of "other similarly situated District of Columbia residents and homeowners," asserting six claims. Am. Compl. ¶ 2. First, the Plaintiff alleges the Wells Fargo Defendants breached the Deed of Trust by (1) acquiring LPI and the Additional Named Insured Certificate despite actual knowledge that the Plaintiff maintained adequate insurance coverage on the property, Am. Compl. ¶ 52; (2) "conceal[ing] both the LPI [p]olicy and its premium by not revealing the same to Plaintiff on or before the active date of the policy," *id.* at ¶ 56; (3) procuring the Additional Named Insured Certificate even though the Deed of Trust did not authorize the Defendants to obtain "[p]ersonal [l]iability [i]nsurance for Plaintiff," *id.* at ¶ 57; (4) failing to obtain LPI at a reasonable cost, *id.* at

---

[5] The Plaintiff provides inconsistent allegations as to whether that payments for the LPI premium are reflected in the monthly mortgage payment statements. *Compare* Am. Compl. ¶ 30 *with id.* at ¶ 67.

¶ 59; and (5) unlawfully retaining 60% of the amount of the premium, *id.* at ¶ 60.  The Plaintiff does not explicitly allege that the Defendants failed to credit her account for the amount of the premium once she provided proof of insurance, but rather argues that reimbursement does not moot the claim.  *Id.* at ¶¶ 31, 32, 56, 67(3)(c), 67(3)(e).

Second, the Plaintiff asserts a claim for unjust enrichment against the QBE Defendants. The Plaintiff argues that the QBE Defendants were unjustly enriched by retaining the 40% of the premium cost for the LPI purportedly retained by the QBE Defendants but not "kicked-back" to the Wells Fargo Defendants.  Am. Compl. ¶ 77.

Third, the Plaintiff alleges a claim of negligence against all Defendants.  The Plaintiff asserts that "[t]he [n]egligent claim is based on Wells Fargo's procurement of the Additional Named Insured Certificate which was not collateral and was procured outside of the terms of the [c]ontract and is independent of the contract."  Am. Compl. ¶ 81.  Furthermore, according to the Plaintiff,

> Because there is no contractual relationship between Plaintiff and QBE, and because there is no contracts between Wells Fargo and Plaintiff for the procurement and placement of the Certificate, the procurement and placement of the certificate created a special relationship between Plaintiff, Wells Fargo and QBE.  The relationship represents special circumstances that imposes upon Wells Fargo and QBE a fiduciary relationship with Plaintiff.  Under the fiduciary relationship, both Wells Fargo and QBE owe Plaintiff a special fiduciary duty of care to protect any financial consideration they may have obtained from Plaintiff because of the special circumstances and special relationship they created.

*Id.* at ¶ 82 (all errors in original).  The Plaintiff suggests this "fiduciary relationship required the Defendants to inform the Plaintiff of their intent to procure LPI and associated payment of the premiums, to search "Wells Fargo's Data Base [sic]" for the existing evidence of the Plaintiff's voluntary insurance coverage before obtaining the LPI, and to "diligently exhaust reasonable means to communicate with the Plaintiff," including calling the Plaintiff, regarding proof of

voluntary coverage before and after placing the LPI and Additional Named Insured Certificate. *Id.* at ¶ 83. "As a direct and proximate cause of Defendants' negligence, Plaintiff suffered severe mental and emotional distress." *Id.* at ¶ 87.

Fourth, the Plaintiff asserts a claim for "fraudulent concealment" as to all Defendants. The Plaintiff alleges that the Defendants: (1) have not provided the Plaintiff with all of the LPI policies and Additional Named Insured Certificates obtained with respect to the Plaintiff's property; (2) "intentionally omitted and otherwise concealed LPI and [Additional Named Insured] Certificate premiums"; and (3) concealed "payments of interest and principal [the Plaintiff] made on the LPI and [Additional Named Insured] Certificate[]." Am. Compl. ¶ 88. The Plaintiff asserts that the concealment was intended to prevent the Plaintiff from bringing legal action within the statute of limitations. *Id.* at ¶ 90. The Plaintiff "petition[s] the court to deem tolled the statute of limitation[s] as to any potential claims . . . that would have otherwise fallen within the statute of limitations had Defendants timely and properly disclosed all conceal [sic] acts and omissions." *Id.* at ¶ 92.

Fifth, the Plaintiff alleges fraud and fraudulent concealment by the Wells Fargo Defendants. The Amended Complaint suggests the Wells Fargo Defendants made a number of "false representations," including:

- Stating that the Wells Fargo Defendants "provided prior notice to Plaintiff for the Placement of the Certificate on her property";

- Stating that the Wells Fargo Defendants "did not know that Plaintiff maintained adequate voluntary coverage and the Certificate was necessary [or authorized] coverage under the terms of the contract"; and

- Concealing the existence of the Additional Named Insured Certificate from the Plaintiff.

Am. Compl. ¶ 94. The Plaintiff further alleges that

9

> Wells Fargo secretly added the premium of the Certificate to Plaintiff Mortgage payoff statement, knowing that she would have no reason to review the same and that if she requested the payoff statement, Wells Fargo would remove the premium from the Payoff Statement and claimed it were never there and that Plaintiff suffered no damages because of the obtainment and placement of the Certificate and its related premium(s).

*Id.* The Plaintiff does not allege that she ever requested the mortgage payoff statement for the Queen Street Property during any time period in which the LPI or Additional Named Insured Certificate were in force. The Plaintiff contends that her "reliance upon Wells Fargo ("Wachovia") began when she signed the Deed of Trust Contract." *Id.* at ¶ 94(5). The Plaintiff explains, "[t]he omission of the misrepresented material facts, the existence of the Certificate and Plaintiff's payments on the same, induced Plaintiff's reliance because she honestly believed that any payments made to Wells Fargo would be for legitimate reasons and at all times relevant to the terms of the Deed of Trust Contract." *Id.*

Sixth, the Plaintiff asserts a claim of fraud and fraudulent concealment against QBE First. The allegations in Count Six are quite convoluted, but appear to claim that QBE First committed fraud by searching Wells Fargo Bank's "database" and placing LPI and Additional Named Insured Certificates on the Queen Street property "with full knowledge" that the Plaintiff maintained sufficient voluntary insurance coverage on the property. Am. Compl. ¶ 96-97. The Plaintiff further alleges that "QBE knowingly, falsely represent that the Certificate was authorized by the contract between Plaintiff and Wells Fargo." *Id.* at ¶ 100. "Plaintiff actually relied on QBE's misrepresentation and willful omission in not informing Plaintiff of the Certificate. The reliance took the form of Plaintiff's continuing premium and principal payments on her Mortgage Equity Loan." *Id.* at ¶ 103. Referring to the cancellation notices the Plaintiff received on September 28, 2011, and March 8, 2012, the Plaintiff alleges QBE also committed "fraudulent acts" by "maintain[ing] the LPI's on her property six month[s] after receiving

recorded knowledge of Plaintiff's voluntary coverage." *Id.*

## II.  LEGAL STANDARD

Pursuant to Federal Rules of Civil Procedure 15(a), "a party may amend its pleading only with the opposing party's written consent or the court's leave," and "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). However, the Court "may properly deny a motion to amend if the amended pleading would not survive a motion to dismiss." *In re Interbank Funding Corp. Securities Litig.*, 629 F.3d 213, 218 (D.C. Cir. 2010). "An amendment is futile if the proposed claim would not survive a motion to dismiss." *Commodore-Mensah v. Delta Airlines, Inc.*, 842 F. Supp. 2d 50, 52 (D.D.C. 2012) (citation omitted).

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint on the grounds it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).  Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.  In deciding a Rule 12(b)(6) motion, a court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint," or "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by [the parties]." *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (citations omitted).

## III.  DISCUSSION

The Wells Fargo Defendants' opposition to the Plaintiff's motion for leave to amend does not identify any objection to the permitting the Plaintiff leave to amend her breach of contract claim.  Therefore, the Court shall permit the Plaintiff to file an amended complaint with respect to that claim during the discovery process so as to not further delay the proceedings in this case.  As set forth below, the Plaintiff's proposed amendments to the remaining claims in the Amended Complaint would not survive a motion to dismiss, and therefore leave to amend shall be denied.

### A.     *Unjust Enrichment as to QBE Defendants*

Count Two of the proposed Amended Complaint alleges unjust enrichment against the QBE Defendants.  A party asserting a claim for unjust enrichment must show that: "(1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust."  *News World Commc'ns, Inc. v. Thompsen*, 878 A.2d 1218, 1222 (D.C. 2005).  Unjust enrichment "presuppose[s] that an express, enforceable contract is absent," therefore courts "generally prohibit litigants from asserting these claims when there is an express contract that governs the parties' conduct."  *Plesha v. Ferguson*, 725 F. Supp. 2d 106, 112 (D.D.C. 2010) (citing *Vila v. Inter-Am. Inv., Corp.*, 570 F.3d 274, 279 (D.C. Cir. 2009)).

The QBE Defendants contend the proposed amendments as set forth in the unjust enrichment claim would not survive a motion to dismiss because "the success of Plaintiff's unjust enrichment claim against QBE FIRST relies on the success of Plaintiff's breach of contract claims against the Wells Fargo Defendants." QBE Defs.' Opp'n at 7.  The Plaintiff argues that "[t]he Non-Collateral Additional Named Insur[ed] Certificate is not [c]ollateral coverage and therefore the Certificate is not governed by the terms of the contract."  Pl.'s Reply

12

at 5.  The Plaintiff's response is misplaced, for two reasons.  First, the text of the Additional Named Insured Certificate, which the Plaintiff attached as an exhibit to the proposed Amended Complaint, explicitly indicates the policy insures only the dwelling located on the Queen Street property—which is the collateral for the mortgage obtained by the Plaintiff from Wells Fargo Bank.  *See* Pl.'s Ex. A.  Second, the Plaintiff's assertion that Wells Fargo Bank was not authorized to obtain the type of coverage set forth in the Additional Named Insured Certificate is by definition a breach of contract claim grounded in the terms of the Deed of Trust governing when and what type of lender-placed insurance Wells Fargo Bank is authorized to obtain on the Plaintiff's property.  As in the original complaint, the unjust enrichment claim in the proposed Amended Complaint necessarily relies on the Plaintiff's success on her breach of contract claim against the Wells Fargo Defendants: if the Wells Fargo Defendants were entitled to obtain the Additional Named Insured Certificate (or the policy reflected in the Certificate), the payment of the premium to the QBE Defendants was not unjust.  For that reason, the Plaintiff's amended unjust enrichment claim would not survive a motion to dismiss.  *See Whiting v. Am. Ass'n of Retired Persons*, 637 F.3d 355, 364 (D.C. Cir. 2011) (finding the district court properly dismissed the plaintiff's unjust enrichment claim because "the survival of this claim depends on the validity of her breach of contract or statutory claim").

   B. *Negligence as to All Defendants*

Count Three of the proposed Amended Complaint asserts a claim of negligence as to all Defendants.  "As a general matter, a claim for negligence in the District of Columbia has four elements: (1) the defendant owed a duty to the plaintiff, (2) the defendant breached its duty, (3) and that breach was the proximate cause of (4) damages sustained by the plaintiff."  *Busby v. Capitol One, N.A.*, 772 F. Supp. 2d 268, 283 (D.D.C. 2011) (citing *Powell v. District of*

*Columbia*, 634 A.2d 403, 406 (D.C. 1993)). "However, the tort must exist in its own right independent of the contract, and any duty upon which the tort is based must flow from considerations other than the contractual relationship. The tort must stand as a tort even if the contractual relationship did not exist." *Carter v. Bank of America, N.A.*, 888 F. Supp. 2d 1, 15 (D.D.C. 2012).

The Defendants argue the Plaintiff's negligence claim would not survive a motion to dismiss because the "duties" identified by the Plaintiff flow entirely from her contractual relationship with Wells Fargo Bank as set forth in the Deed of Trust. The Plaintiff concedes this argument with respect to the LPI policies, but suggests that a negligence claim based on the Additional Named Insured Certificate would survive because "the Certificate is not governed by the terms of the contract." Pl.'s Reply at 6. Despite quoting *Busby* and *Carter*, the Plaintiff fails to offer a single argument as to *how* the duties identified in the proposed Amended Complaint flow from considerations other than the contractual relationship between the Plaintiff and Wells Fargo Bank. *See id.* at 12. The Plaintiff simply asserts that "QBE had an undeniable duty of reasonable care owed to Plaintiff to obtain her consent for the procurement and placement" of the Additional Named Insured Certificate. *Id.* at 10-11. The Amended Complaint asserts that

> Because there is no contractual relationship between Plaintiff and QBE, and because there is no contracts between Wells Fargo and Plaintiff for the procurement and placement of the Certificate, the procurement and placement of the certificate created a special relationship between Plaintiff, Wells Fargo and QBE. The relationship represents special circumstances that imposes upon Wells Fargo and QBE a fiduciary relationship with Plaintiff. Under the fiduciary relationship, both Wells Fargo and QBE owe Plaintiff a special fiduciary duty of care to protect any financial consideration they may have obtained from Plaintiff because of the special circumstances and special relationship they created.

Am. Compl. ¶ 82 (all errors in original). Not only is this allegation entirely conclusory, it is also circular: according to the Plaintiff, the procurement of the Additional Named Insured Certificate

created a special relationship that required the Defendants to obtain the Plaintiff's consent before procuring the Certificate. Fundamentally, each of the "duties" identified by the Plaintiff in paragraph 90 of the proposed Amended Complaint flow from the provisions of the Deed of Trust which govern when and how Wells Fargo Bank can obtain insurance on the Queen Street property at the Plaintiff's expense. The Plaintiff's proposed negligence claim would not survive a motion to dismiss; accordingly the Court shall not permit the Plaintiff to amend the Complaint to include this claim.

### C. *Fraudulent Concealment as to All Defendants*

Count Four of the proposed Amended Complaint asserts a claim for "fraudulent concealment" against all Defendants. The Court previously dismissed the Plaintiff's fraudulent concealment claim because the Plaintiff conceded that the "fraudulent concealment" is not an independent cause of action, but rather an equitable doctrine that may toll the statute of limitations. 3/1/12 Mem. Op., ECF No. [30], at 27 n.7. In her reply brief, the Plaintiff argues that "[t]he fraudulent concealment claim is advanced for statute of limitation purposes," which the Plaintiff believes may be an issue if the amended allegations regarding the Additional Named Insured Certificate do not relate back to the filing of the original Complaint. Pl.'s Reply at 13. However, the Plaintiff once again concedes that fraudulent concealment is not an independent cause of action. Accordingly, the Court shall deny the Plaintiff leave to amend the Complaint to include the allegations of fraudulent concealment in the form proposed in the Amended Complaint. *Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").

### D. Fraud and Fraudulent Concealment as to the Wells Fargo Defendants

Count Five alleges fraud and fraudulent concealment against the Wells Fargo Defendants. The Wells Fargo Defendants argue this count would not survive a motion to dismiss for numerous reasons, including that "the Amended Complaint is devoid of any alleged misrepresentation that preceded the closing on her mortgage loan that somehow induced her reliance in entering into the loan transaction," "the Plaintiff has not stated what she did (or did not do) because of the temporary posting of the LPI premium as a charge to her account," and "the Plaintiff nonetheless has not satisfied the requirements for pleading fraud with particularity." Wells Fargo Defs.' Opp'n at 8-9. The Plaintiff fails to respond to any of these contentions; in fact, the Plaintiff's Reply brief omits any reference to the Wells Fargo Defendants' opposition. Therefore, Court treats the Wells Fargo Defendants' arguments as conceded, and finds amending the Complaint to include Count Five would be futile. *Hopkins*, 284 F. Supp. 2d at 25.

### E. Fraud and Fraudulent Concealment as to the QBE Defendants

Count Six of the proposed Amended Complaint alleges fraud and fraudulent concealment by the QBE Defendants. To succeed on a claim for fraud, the Plaintiff must establish: (1) that the defendant made a false representation or willful omission of a material fact; (2) that the defendant had knowledge of the misrepresentation or willful omission; (3) that the defendant intended to induce the plaintiff to rely on the misrepresentation or willful omission; (4) that the plaintiff actually relied on that misrepresentation or willful omission; and (5) that the plaintiff suffered damages as a result of her reliance. *Schiff v. Am. Ass'n of Retired Persons*, 697 A.2d 1193, 1198 (D.C. 1997). "In alleging fraud . . . a party must state *with particularity* the circumstances constituting fraud," though "[m]alice, intent, knowledge and other conditions of a

person's mind may be alleged generally." Fed. R. Civ. P. 9(b) (emphasis added).

The putative Amended Complaint identifies three purported misrepresentations by the QBE Defendants: (1) failing to inform the Plaintiff of the placement of the Additional Named Insured Certificate, Am. Compl. ¶ 103; (2) later representing that the Certificate was obtained in compliance with the Deed of Trust, *id.* at ¶ 101; and (3) failing to cancel the LPI until February 2012 despite the Plaintiff submitting proof of voluntary insurance coverage in September 2011, *id.* at ¶ 104. Each of these allegations suffers from the same flaw: the purportedly fraudulent acts are only fraudulent because of obligations set forth in the Deed of Trust. *See* QBE Defs.' Opp'n at 8. "District of Columbia law requires that the factual basis for a fraud claim be separate from any breach of contract claim that may be asserted." *Plesha*, 725 F. Supp. 2d at 113 (citing *Choharis v. State Farm Fire & Cas. Co.*, 961 A.2d 1080, 1089 (D.C. 2008)). "[T]he tort must exist in its own right independent of the contract, and any duty upon which the tort is based must flow from considerations other than the contractual relationship." *Choharis*, 961 A.2d at 1089.

> [C]onduct occurring during the course of a contract dispute may be the subject of a fraudulent or negligent misrepresentation claim when there are facts separable from the terms of the contract upon which the tort may independently rest and when there is a duty independent of that arising out of the contract itself, so that an action for breach of contract would reach none of the damages suffered by the tort.

*Id.* The Plaintiff acknowledged this requirement in her Reply brief, but offers no explanation as to how the fraud claim against QBE satisfies the *Choharis* standard, except to say that "District of Columbia Law does not preclude [f]raudulent and negligent misrepresentation claims simply because the fact predicate in support of the claims also supports a breach of contract claim." Pl.'s Reply at 16, 22-23. To the extent this is true, it is non-responsive. The operative question is whether the QBE Defendants had a duty "independent of that arising out of" the Deed of Trust. Each of the purportedly fraudulent acts identified by the Plaintiff is (allegedly) fraudulent

only because it contradicted the terms of the Deed of Trust governing LPI.  The Plaintiff's entire theory of liability under Count Six is that the QBE Defendants' conduct in placing the Additional Named Insured Certificate was inconsistent with the terms of the Deed of Trust governing lender-placed insurance.  For example, the Plaintiff faults the QBE Defendants for acting not in compliance with the Deed of Trust: "QBE knew that the misrepresentation of the Certificate as a LPI was *contractually* impermissible."  Am. Compl. ¶ 101 (emphasis added).  Apart from the Deed of Trust, the Plaintiff offers no legal authority or other theory of liability to show that the QBE Defendants had a duty to provide the Plaintiff advance notice that the QBE Defendants intended to issue an insurance policy at the request of the Wells Fargo Defendants, using premiums paid by the Wells Fargo Defendants.  Fundamentally, the purportedly "fraudulent acts" identified in Count Six are inseparable from the terms of the Deed of Trust and the restrictions placed on the Wells Fargo Bank's ability to obtain lender-placed insurance on the Plaintiff's property.  *Choharis*, 961 A.2d at 1089.  As alleged, the claim of fraud against the QBE Defendants would not survive a motion to dismiss.

## IV.  CONCLUSION

For the foregoing reasons, the Court finds the unjust enrichment, negligence, and fraud claims would not survive a motion to dismiss.  Furthermore, although the Plaintiff may deem it necessary to include allegations relating to fraudulent concealment in her complaint, by her own admission those allegations do no constitute a separate cause of action.  Accordingly, the Plaintiff's [34] Motion for Leave to File an Amended Complaint is GRANTED IN PART and DENIED IN PART.  So as not to further delay proceedings in this matter, during the course of discovery the Plaintiff may file an amended complaint revising the breach of contract allegations as set forth in the proposed amended complaint, and including allegations of fraudulent

concealment only to establish the breach of contract claim(s) relating to the Additional Named Insured Certificate are timely.

An appropriate Order accompanies this Memorandum Opinion.

                                                      */s/*
                                           **COLLEEN KOLLAR-KOTELLY**
                                           UNITED STATES DISTRICT JUDGE