# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|                                    |     |                          |
|------------------------------------|-----|--------------------------|
|                                    | *   |                          |
| ANDREA JACKSON CANNON,             | *   |                          |
|      **Plaintiff,**                | *   |                          |
| **v.**                             |     | **Case No.: PWG-13-1324** |
|                                    | *   |                          |
| **WELLS FARGO BANK, N.A.,** *et al.,* | *   |                          |
|      **Defendant.**                | *   |                          |
|                                    | *   |                          |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

This Memorandum and Order addresses:

1) Defendants Wells Fargo Bank, N.A. ("WFB") and Wells Fargo Insurance, Inc.'s ("WFI" and, collectively with WFB, "Wells Fargo" or "WF") Motion to Dismiss, ECF No. 12, and supporting Memorandum ("WF Dismiss Mem."), ECF No. 12-1; Plaintiff Andrea Jackson Cannon's Opposition ("Pl.'s WF Opp'n"), ECF No. 22; and Wells Fargo's Reply, ECF No. 26;

2) Defendant QBE Insurance Corp.'s ("QBE") Motion to Dismiss, ECF No. 18, and supporting Memorandum ("QBE Mem."), ECF No. 18-1; Plaintiff's Opposition ("Pl.'s QBE Opp'n"), ECF No. 20; and QBE's Reply, ECF No. 25;

3) Plaintiff's Motion for Conversion, ECF No. 27, and supporting Memorandum ("Pl.'s Conv. Mem."), ECF No. 27-1; Wells Fargo's Opposition ("WF Conv. Opp'n"), ECF No. 29; and Plaintiff's Reply ("Pl.'s WF Conv. Reply"), ECF No. 30; and QBE's

Opposition ("QBE Conv. Opp'n"), ECF No. 31, and Plaintiff's Reply ("Pl.'s QBE Conv. Reply").

I find that a hearing is unnecessary in this case. *See* Local Rule 105.6. For the reasons stated below, Wells Fargo's Motion to Dismiss is GRANTED, QBE's Motion to Dismiss is GRANTED, and Plaintiff's Motion to Convert is DENIED.

## I.    BACKGROUND

For purposes of considering a motion to dismiss, this Court accepts the well-pleaded facts that Plaintiff has alleged in her complaint as true. *See Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011). Here, because Plaintiff's lengthy complaint is densely populated by improper argument, conclusory assertions of counsel, and despairingly few factual allegations, I have relied heavily on Plaintiff's exhibits and the parties' motion papers in order to decode Plaintiff's allegations. Although many of the material facts alleged in the Amended Complaint are contradicted by Plaintiff's own exhibits, ECF No. 2, "in the event of conflict between the bare allegations of the complaint and any exhibit attached pursuant to Rule 10(c), . . . the exhibit prevails." *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991).[1]

---

[1]    I also must note that Plaintiff's Amended Complaint, and indeed, all of Plaintiff's submissions to this Court, are exceedingly difficult to read. Although each pleading and memorandum is excessively long, the length is due to inappropriate inclusion of irrelevant facts, argument, and conclusory statements. The consistency of Plaintiff's approach in this case and related litigation filed in this and other courts raises questions as to whether Plaintiff's true purpose is obfuscation. The factual allegations of the Complaint never are fully laid out, and the Complaint instead focuses on conclusory repetitions of Defendants' alleged misconduct. Moreover, the heavy use of boldface and underlining in a variety of fonts, font sizes, and margins has made it difficult to focus fully on the substance of the Amended Complaint in any event. *See also Cannon I* Hr'g Tr., *Cannon v. Wells Fargo Bank, N.A.*, No. RWT-12-377, 29:10–11, 41:15–16 (D. Md. June 8, 2012), WFB Mot. to Dismiss Ex. B, ECF No. 12-3 (noting

The core of Plaintiff's complaint seems to revolve around the allegedly improper placement of policies commonly known as either "Lender Placed Insurance" or "Force-Placed Insurance" ("LPI") policies on property owned by Plaintiff and subject to a mortgage in favor of Defendant Wells Fargo Bank, N.A. ("WFB"). Am. Compl. ¶ 7, ECF No. 2.[2]

Plaintiff is the owner of a property located at 12400 Old Fort Washington Road, Fort Washington, Maryland 20744 (the "Property"). Deed of Trust, Am. Compl. Ex. 1, ECF No. 2-2. *But see* Compl. ¶ 16 (identifying Plaintiff's property as located at "1200 Fort Washington, and Road Fort Washington, Maryland, 20744").[3] The Amended Complaint alleges that Plaintiff's interest in the property is subject to $178,859.60 in debt originally owed to Wachovia Bank, N.A. ("Wachovia"), secured by a Deed of Trust executed by Plaintiff and Wachovia and dated May 8, 2007. Deed of Trust 1. Although the complaint incorrectly asserts that "Plaintiff and WFB executed [the] Deed of Trust," Compl. ¶ 17, WFB has explained—and Plaintiff does not dispute—that it is the successor to Wachovia. WFB Dismiss Mem. 1.

Section five of the Deed of Trust requires Plaintiff to maintain a certain level of insurance coverage on the Property as security for the loan. Deed of Trust § 5, ¶ 1. It also provides that if

---

that Plaintiff's complaint is "very, very difficult to read" and describing it as "jumbled and sloppy").

[2]     It is not clear what changes were made between the original Complaint, ECF No. 1, and the Amended Complaint, because Plaintiff's counsel has not complied with Local Rule 103.6(c) requiring an amended pleading to be accompanied by a red-lined version showing the changes. *See also Cannon I* Hr'g Tr. 38:22–25, *Cannon v. Wells Fargo Bank, N.A.*, No. RWT-12-377 (D. Md. June 8, 2012), WF Dismiss Mem. Ex. B, ECF No. 12-3 ("[The Amended Complaint] didn't comply with our red line rules, but I've basically given up on the plaintiff being able to comply with the red line rules so we can see what the changes are."). The only obvious change is that the Amended Complaint has omitted pages eight and nine, which appear to contain key background facts. Although the omission of these pages may, by itself, prevent the Amended Complaint from satisfying the requirements of Fed. R. Civ. P. 8 and of *Iqbal* and *Twombly*, I will attempt to fill in the gaps from the equivalent pages of the original Complaint.

[3]     Plaintiff's filings all contain a large number of typographical and grammatical errors. All text quoted from Plaintiff's filings, including punctuation, is quoted *sic* unless otherwise noted.

Plaintiff should fail to maintain adequate coverage, the mortgagee may obtain a lender-placed policy, at Plaintiff's expense, in order to protect its interest. Specifically, the Deed of Trust states, in relevant part:

> If Trustor fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Trustor, Trustor's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Trustor could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the rate applicable to the Debt Instrument from time to time, from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

*Id.* § 5, ¶ 2. The Deed of Trust  goes on to state that the lender has the right to disapprove of Plaintiff's insurance policies and that, "[i]f Lender requires, Trustor shall promptly give to Lender copies of all policies, renewal certificates, receipts of paid premiums and renewal notices." *Id.* § 5, ¶ 3.

In 2010, Plaintiff cancelled one of her existing insurance policies (the "Traveler's Policy"), which resulted in the issuance of a Notice of Cancellation. Notice of Cancellation, Am. Compl. Ex. 14, ECF No. 2-15; *see also* Am. Compl. ¶ 18. However, Plaintiff maintains that she remained insured by other policies at all times relevant to this case. Am. Compl. ¶ 18. The Notice of Cancellation appears to have been sent to Wachovia as well as to Plaintiff, Notice of Cancellation 1, but the Amended Complaint does not appear to contain any allegations with respect to communications between Plaintiff and Wells Fargo or Wachovia after the Notice of Cancellation was sent. *See* Am. Compl. That is to say, it is not clear that Plaintiff ever clarified that she remained insured notwithstanding the cancellation of the Traveler's Policy.

Plaintiff alleges that Wells Fargo placed LPI policies on the Property through Defendant QBE even though Plaintiff had adequate insurance coverage. Compl. ¶ 18. According to the complaint, the following LPI policies were placed on the property:

- A QBE 90-Day Binder bearing the notification date May 20, 2010, covering a term from May 5, 2010 to May 5, 2011, and providing $834,500 in coverage on the Property for a premium of $7,844.30, Am. Compl. Ex. 5, ECF No. 2-6;

- An Additional Named Insured Certificate bearing the notification date August 3, 2010, covering a term from May 5, 2010 to May 5, 2011, and providing $834,500 in coverage on the Property for a premium of $7,844.30, Am. Compl. Ex. 6, ECF No. 2-7;

- An Additional Named Insured Certificate bearing the notification date May 17, 2011, covering a term from May 5, 2011 to May 5, 2012, and providing $834,500 in coverage on the Property for a premium of $8,011.20, Am. Compl. Ex. 7, ECF No. 2-8; and

- An Additional Named Insured Certificate (the "2012 Certificate") bearing the notification date July 19, 2012, covering a term from May 5, 2012 to May 5, 2013, and providing $704,000 in coverage on the Property for a premium of $6,758.40, Am. Compl. Ex. 9, ECF No. 2-10.

According to Plaintiff, at least the 2012 Certificate should not have been issued because "Wells Fargo . . . had personal knowledge that Plaintiff maintained coverage on the property." Am. Compl. ¶ 40.b. Although Plaintiff attaches a document that she characterizes as "Proof of Insurance," 2011 Great Am. Cover Page, Am. Compl. Ex. 11, ECF No. 2-12, that document appears to document insurance terminating on April 25, 2012, before coverage under the 2012

Certificate commenced.   Plaintiff also has attached a copy of a mortgage statement with a handwritten note saying, "I have hazard insurance, and have always had with my insurance. Please remove and return funds with any interest or penalties I paid. See enclosed information." July 2012 Mortgage Statement, Am. Compl. Ex. 8, ECF No. 2-9.   Although it can be assumed from context that this note was sent to Wells Fargo, neither the exhibit nor the Amended Complaint contains any suggestion as to what the "enclosed information" was or any evidence that Plaintiff ever tendered a relevant policy to Wells Fargo.   *But see* Letter from Lynn R. Thurman to Wells Fargo Bank (July 2, 2013), Pl.'s WF Opp'n Ex. 1-A, ECF No. 22-5 (asserting in 2013 that Plaintiff had maintained adequate insurance coverage during the period in question).

On February 7, 2012, Plaintiff filed a complaint in this Court against WFB ("*Cannon I*"). Compl., *Cannon v. Wells Fargo Bank*, No. RWT-12-377 (D. Md. Feb. 7, 2012), ECF No. 1.   The original complaint alleged (1) "BREACH OF CONTRACT; DUTY OF CARE"; (2) "VIOLATION OF MARYLAND UNFAIR OR DECEPTIVE TRADE PRACTICE ACT"; (3) "FRAUDULENT CONCEALMENT AND FRAUDULENT MISREPRESENTATION"; (4) breach of fiduciary duty; (5) unjust enrichment; (6) conversion; and (7) "COMMON LAW NEGLIGENCE; ALTERNATIVELY; NEGLIGENT MISREPRESENTATION.   *Id.*   On April 23, 2012, Plaintiff filed a motion for leave to amend her complaint, seeking to add QBE as a defendant and to add a claim for "Malicious breach of contract; UNDER THE THEORY OF COMMON LAW FRAUD"; multiple fraud counts against QBE; and a claim for "FRAUDULENT CONSEALMENT [*sic*]."   *See* Am. Compl. (the "*Cannon I* Compl."), Pl.'s Mot. for Leave of Court to File an Am. Compl. Ex. 1, *Cannon v. Wells Fargo Bank*, No. RWT-12-377 (D. Md. Apr. 23, 2012), ECF No. 16-1.

Judge Titus held a hearing on Wells Fargo's motion to dismiss in open court on June 8, 2012. *Cannon I* Hr'g Tr., *Cannon v. Wells Fargo Bank, N.A.*, No. RWT-12-377 (D. Md. June 8, 2012), WF Dismiss Mem. Ex. B, ECF No. 12-3. At that hearing, Wells Fargo's counsel (who remains their counsel in this case), represented that Wells Fargo had sent several notices to Plaintiff requesting that she send proof of insurance and advising her that, if she did not provide satisfactory proof of insurance, an LPI policy would be placed on the Property, and that Plaintiff did not respond. *Id.* at 3:10 – 4:21. Plaintiff never responded, and LPI policies were obtained. *Id.* In January 2012, when Plaintiff belatedly provided notice that "there had not been a lapse in insurance," Wells Fargo notified her that the LPI policies would be retroactively cancelled and the posting of premiums to her account would be reversed. *Id.* at 4:22 – 5:8. According to Wells Fargo, the LPI policies were cancelled about a month before Plaintiff ever filed her complaint in *Cannon I*. *Id.* at 5:9–10. Proof that those policies were cancelled has been attached to Plaintiff's Amended Complaint. *See* 2010 Policy Cancellation Notice, Am. Compl. Ex. 12, ECF No. 2-13; 2011 Policy Cancellation Notice Cover Page, Am. Compl. Ex. 13, ECF No. 2-14 (omitting exhibit but describing similar document to 2010 Policy Cancellation Notice).

Nevertheless, in responding to Wells Fargo's counsel's argument during the hearing, Plaintiff's counsel seemed unclear on a theory of damages or even whether he believed that he could in good faith dispute Wells Fargo's representations. The following colloquy is illustrative of Plaintiff's position at that hearing:

> THE COURT: Well, my simple question is this. Counsel for the defense as an officer of the Court has represented to me that whatever charges were assessed against [Plaintiff's] mortgage account with respect to lender placed insurance have been reversed. And all I want to know is, do you dispute that the lender, the lender has reversed those charges and they no longer appear on her account? That's all I want to know.

> MR. SPIKES: I don't know what appears on her account.

Yes, I do dispute that, Judge.    I'm saying to the Court that I need discovery in order to say to the Court with some specificity—

THE COURT: Well, you need to have something more than speculation to bring a lawsuit.    I mean, you're in possession of your own client's mortgage account.    You can tell whether it's been credited back or not.

MR. SPIKES: No, I can't, Your Honor.

THE COURT: I mean, I don't know whether we're here with serious business or not.    I mean, if your client has suffered no loss, then that's a fact that I need to take into account in deciding what to do with this case.

MR. SPIKES: Well, she has suffered a loss.

THE COURT: What loss has she suffered?

MR. SPIKES: And she just may have—
Well, Judge, let's assume that they charged her account, and let's assume she made payments on that money, on the money that they charged her.    And then let's assume that they reversed it.    That's damages.    She paid.

THE COURT: How is that damages if they reversed it?

MR. SPIKES: If she actually paid — if someone take your credit card and charge something on your card, and when you come to understand that this has been unlawfully charged, they re-credit, they credit you, you have suffered a damage.    You have suffered damages.

THE COURT: How have I suffered damages if my account has had a charged made to it that was reversed?

Hr'g Tr. 25:5 – 26:14.

In ruling on the motions, Judge Titus noted that "there are profound questions as to the drafting of the complaint, but more importantly, as to the adequacy of the allegations in the complaint."    *Id.* at 39:1–4.    Judge Titus held that Plaintiff's tort claims were foreclosed by *Jacques v. First Nat'l Bank of Md.*, 515 A.2d 756 (Md. 1986), on the basis that "when there is a contractual relationship, as there is here, the Economic Loss Doctrine is going to preclude you from pursuing damages other than those which are awardable under the contract itself, unless we

8

can come up with some notion that would create a tort duty." *Cannon I* Hr'g Tr. 42:1–5. Relying on *Jacques*, Judge Titus dismissed Plaintiff's claims for malicious breach of contract, fraud, fraudulent concealment, breach of fiduciary duty, conversion, and negligence, also noting that Plaintiff's complaint fell well short of the pleading requirements for fraud in any event. *Id.* at 43:7 – 44:20. Plaintiff's claim for fraud against QBE was dismissed as giving "simply no basis for a fraud claim against QBE which provided insurance to the lender, which was the lender's right to procure under the terms of the Deed of Trust." *Id.* at 43:16–21.

With respect to the breach of contract claim, Judge Titus held that "Wells Fargo had the right to place insurance in the absence of insurance information being satisfactorily provided to it." *Id.* at 44:22–24. Accordingly, no breach had occurred. *Id.* at 44:25 – 45:1. Further, because the charges were reversed, there was no basis for a breach of contract claim in any event. *Id.* at 45:1–4. Judge Titus also noted that Wells Fargo was not obligated to provide notice to Plaintiff before obtaining an LPI policy, and that they reserved the right to reject Plaintiff's insurance as insufficient regardless. *Id.* at 45:5–10. Judge Titus dismissed the claims against Wells Fargo with prejudice. *Id.* at 46:18–19.

Because Plaintiff had not yet served QBE in the First Action, Judge Titus dismissed all claims against QBE without prejudice. *Id.* at 46:19–20. In so doing, Judge Titus noted:

> If the plaintiff wishes to pursue a claim against QBE, and I am extremely skeptical that there could possibly be a basis for a claim against it, it will have to file an Amended Complaint limited to QBE.
> And I, again, would caution the plaintiff that that may not be an intelligent thing to do, unless there are far more facts available to the plaintiff to allege than are before the Court today.

*Id.* at 46:20 – 47:2.

Judge Titus's ruling was affirmed on appeal. *Cannon v. Wells Fargo Bank, N.A.*, 509 F. App'x 251 (4th Cir. 2013). The Fourth Circuit expressly noted that Plaintiff's tort claims were

foreclosed by the existence of a contract, *see id.* at 252 (citing *Silver Hill Station Ltd. P'ship v. HSA/Wexford Bancgroup, LLC*, 158 F. Supp. 2d 631, 640 (D. Md. 2001); *Jacques*, 515 A.2d at 759), and that Plaintiff "failed to plead her claims of fraud with the required particularity," *id.* (citing Fed. R. Civ. P. 9(b)). The court also held that "the terms of the Deed of Trust directly contradict Cannon's arguments" that Wells Fargo was obligated to provide notice or seek competitive rates before obtaining LPI coverage." *Id.* Finally, the court affirmed Judge Titus's finding that "the property at issue was commercial in nature and outside the purview of the Maryland Consumer Protection Act," finding the issue waived on appeal. *Id.* The Fourth Circuit denied rehearing and rehearing en banc on May 14, 2013. *Cannon v. Wells Fargo Bank, N.A.*, No. 12-1778 (4th Cir. May 14, 2013), ECF No. 54. The U.S. Supreme Court denied Plaintiff's request to proceed *in forma pauperis*. *Cannon v. Wells Fargo Bank, N.A.*, No. 13-7034, 2014 WL 102388 (Jan. 13, 2014). The docket reflects that, notwithstanding an extension of time, Plaintiff paid the filing fee in the Supreme Court on February 3, 2014. Docket, *Cannon v. Wells Fargo Bank, N.A.*, No. 13-7034 (U.S. Aug. 12, 2013), http://www.supremecourt.gov/Search.aspx?FileName=/docketfiles/13-7034.htm (last visited Feb. 19, 2014).

Undeterred by adverse rulings and Judge Titus's warnings, Plaintiff filed a new complaint in this Court on May 3, 2013, Compl., and promptly amended her complaint on May 6, 2013, Am. Compl. Plaintiff's Amended Complaint commences with the admission that "Action deriving from the same transaction and occurrences as the instant cause was brought against the same Defendants in this court under civil action number 8:12-cv-00377-RWT." Am. Compl. ¶ 2. It goes on to claim that this action is different because "[n]ot part of the previous litigation is the [2012 Certificate]." Am. Compl. ¶ 30. In her Amended Complaint, Plaintiff sets forth the following counts:

1) "COUNT ONE BREACH OF CONTRACT WFB," Am. Compl. 39;

2) "COUNT TWO NEGLIGENCE-WFB," *id.* at 49;

3) "COMMON LAW FRAUD CLAIM AGAINST WELLS FARGO FOR DEDUCTING FROM PLAINTIFF'S ACCOUNT THE SUM OF $6,758," *id.* at 53;

4) "COUNT FOUR UNJUST ENRICHMENT AGAINST DEFENDANT QBE FIRST," *id.* at 62;

5) "COUNT FIVE NEGLIGENCE AGAINST DEFENDANT QBE," *id.* at 64;

6) "COUNT SIX NEGLIGENT CAUSE OF ACTION AGAINST QBE AND WFB JOINTLY BASIS FOR THE NEGLIGENT CLAIM(S) IS EXHIBIT#8 AND#9," *id.* at 67;

7) "COUNT SEVEN FRAUDULENT CONCEALMENT AGAINST BOTH WELLS FARGO AND QBE," *id.* at 71;

8) "CLASS ACTION ALLEGATIONS IN COMPLIANCE WITH D.C Fed. Court Local Rule 21.1(a)[4] PETITION FOR CLASS CERTIFICATION IS SOUGHT UNDER FEDERAL RULES OF CIVIL PROCEDURE RULE 23," *id.* at 75; and

9) "DECLARATORY JUDGMENT Rule 57 of the Federal Rules of Civil Procedure," *id.* at 78.

The Wells Fargo Defendants moved to dismiss on June 26, 2013, WF Mot. to Dismiss, and QBE moved to dismiss on July 2, 2013, QBE Mot. to Dismiss. Plaintiff also has moved to convert the motions to dismiss to motions for summary judgment on August 28, 2013. Pl.'s Mot. to Convert. All of those motions have been briefed fully and now are before me. Plaintiff also

---

[4]   It is not clear why Plaintiff attempts to rely on the local rules for the U.S. District Court for the District of Columbia.

moved for class certification on January 3, 2014, Pl.'s Mot. to Certify, ECF No. 37. That motion is not yet ripe and, in any event, is mooted by my rulings on the other pending motions.

## II.      STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012). This rule's purpose "'is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)). To that end, the Court bears in mind the requirements of Fed. R. Civ. P. 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79; *see Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

When reviewing a motion to dismiss, "[t]he court may consider documents attached to the complaint, as well as documents attached to the motion to dismiss, if they are integral to the complaint and their authenticity is not disputed." *Sposato v. First Mariner Bank*, No. CCB-12-1569, 2013 WL 1308582, at *2 (D. Md. Mar. 28, 2013); *see CACI Int'l v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009); *see also* Fed. R. Civ. P. 10(c) ("A copy of a

written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

Moreover, where the allegations in the complaint conflict with an attached written instrument,

"the exhibit prevails." *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465

(4th Cir. 1991); *see Azimirad v. HSBC Mortg. Corp.*, No. DKC-10-2853, 2011 WL 1375970, at

*2–3 (D. Md. Apr. 12, 2011).  However, if the Court considers matters outside the pleadings, it

must treat the motion as a motion for summary judgment.  Fed. R. Civ. P. 12(d); *Syncrude*

*Canada Ltd. v. Highland Consulting Grp., Inc.*, No. RDB-12-318, 2013 WL 139194, at *2 (D.

Md. Jan. 10, 2013).

## III.    DISCUSSION

### A. Wells Fargo's Motion to Dismiss

#### 1.   Res Judicata

The primary argument put forward by Wells Fargo is that Plaintiff's claims all are barred

by the doctrine of *res judicata*.  WF Dismiss Mem. 7–10.  "Res judicata, also known as claim

preclusion, bars a party from relitigating a claim that was decided or could have been decided in

an original suit." *Laurel Sand & Gravel Co. v. Wilson*, 519 F.3d 156, 161 (4th Cir. 2008) (citing

*Pueschel v. United States*, 369 F.3d 345, 355 (4th Cir. 2004)).  "Generally, claim preclusion

occurs when three conditions are satisfied: 1) the prior judgment was final and on the merits . . .;

2) the parties are identical, or in privity, in the two actions; and, 3) the claims in the second are

based upon the same cause of action involved in the earlier proceeding." *First Union*

*Commercial Corp. v. Nelson, Mullins, Riley & Scarborough (In re Varat Enterprises)*, 81 F.3d

1310, 1315 (4th Cir. 1996) (citing *Kenny v. Quigg*, 820 F.2d 665, 669 (4th Cir. 1987)).  Further,

> The test for deciding "whether the causes of action are identical for claim
> preclusion purposes is whether the claim presented in the new litigation 'arises
> out of the same transaction or series of transactions as the claim resolved by the
> prior judgment.'" *Pittson Co. v. United States*, 199 F.3d 694, 704 (4th Cir. 1999).
> "Newly articulated claims based on the same [transactional] nucleus of facts may
> still be subject to a res judicata finding if the claims *could have been brought* in
> the earlier action." *Tahoe Sierra Pres. Council v. Tahoe Regional Planning
> Agency*, 322 F.3d 1065, 1078 (9th Cir. 2003).

*Laurel Sand & Gravel*, 519 F.3d at 162 (emendation in original) (emphasis added).

Importantly, Plaintiff's Amended Complaint concedes that "[a]ction deriving from the same transaction and occurrences as the instant cause was brought against the same Defendants in this court under civil action number 8:12-00377-RWT." Am. Compl. ¶ 2. However, Plaintiff maintains that "PREVIOUS DISMISSED CAUSE AGAINST WFB ARE NOT PART OF THE INSTANT COMPLAINT." Am. Compl. 2. And in her opposition Plaintiff claims that "all claims brought in [her initial case before Judge Titus] are omitted as claims against Wells Fargo Defendant in [this case]." Pl.'s WF Opp'n 1. Unfortunately, Plaintiff's long and convoluted Amended Complaint makes it difficult to determine precisely what she intended to plead. *See generally* Am. Compl.

What is clear is that the overwhelming majority of what is pleaded in the Amended Complaint constitutes matters that are precluded by res judicata. Most of the harms detailed in the Complaint relate to the exact same LPI placements that were the subject of *Cannon I*. *Compare* Am. Compl. ¶¶ 18–22 (describing a series of LPI placements in 2010 through 2012), *with Cannon I* Compl. ¶¶ 38–42 (describing a series of LPI placements in 2010 and 2011). Because any claims arising out of those LPI placements *could* have been brought in that action, all such claims are barred by the doctrine of res judicata.

It is not clear whether Plaintiff's un-numbered claim for declaratory judgment is asserted as a separate count, nor is it clear that such a claim would be appropriate insofar as it seems only

to parrot the relief sought in Counts I through VII.  But assuming that Plaintiff did intend to

plead a separate count for declaratory judgment, she has sought only interpretation of the Deed

of Trust and declaration of the relationship between the parties.  *See* Am. Compl. ¶ 156.  These

claims could have been brought—and, for the most part, actually were addressed, *see Cannon I*

Hr'g Tr. 44:21 – 45:10—in *Cannon I.*  Accordingly, Plaintiff's claim for declaratory judgment

also is barred by res judicata.

Plaintiff's allegations relating to the 2012 Certificate present a different issue.  No claims

arising out of the 2012 Certificate actually were asserted in *Cannon I. See* WF Dismiss Mem. 2.

Plaintiff takes the position that no such claims *could* have been brought because she did not

receive notice of the 2012 Certificate until July 31, 2012, after *Cannon I* had been dismissed by

Judge Titus on June 8, 2012.  *See* Pl.'s WF Opp'n ¶ 4; 2012 Certificate (bearing Notification

Date "07/09/12").

The Wells Fargo Defendants respond that Plaintiff is factually incorrect, and that Plaintiff

actually received notice as early as April 30, 2012, in the form of a letter bearing that date that

sought Plaintiff's insurance information.  *See* WF Dismiss Reply 3; April 2012 Letter, Franske

Aff. Ex. 2, ECF No. 26-1 (requesting Plaintiff's insurance information and bearing the date April

30, 2012).  At the very latest, Wells Fargo asserts that Plaintiff had notice in a May 30, 2012

letter that informed her that "Wells Fargo Bank, N.A. has secured temporary insurance coverage

in the form of a binder."  WF Dismiss Reply 3; May 2012 Letter, Franske Aff. Ex. 3, ECF No.

26-1 (bearing the date May 30, 2013 and the "Insurance Effective Date" of 04/15/12).

It may be that Plaintiff did receive notice of the 2012 Certificate prior to the dismissal of

*Cannon* , in which case any such claims would be barred by res judicata.  However, on a motion

to dismiss, a court must work "on the assumption that all the allegations in the complaint are true

(even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).    Accordingly, I must assume for the purpose of this motion that Plaintiff did not, in fact, receive notice of the 2012 Certificate until after *Cannon I* had been dismissed, and therefore claims arising out of the 2012 Certificate are not precluded.[5]

### 2.  Counts II, III, VI, VII for Tort Claims Arising out of the Deed of Trust

Wells Fargo also seeks to dismiss Counts II, III, VI, and VII on the ground that they "all purport to state common law tort claims against Wells Fargo. Wells Fargo Dismiss Mem. 10.  It is well-settled in Maryland that, "'[t]he mere negligent breach of a contract, absent a duty or obligation imposed by law independent of that arising out of the contract itself, is not enough to sustain an action sounding in tort.'" *Jacques v. First Nat'l Bank of Md.*, 515 A.2d 756, 759 (Md. 1986) (quoting *Heckrotte v. Riddle*, 168 A.2d 879, 882 (Md. 1961)).  To the contrary, "for a tort duty to come into play, extraordinary circumstances above and beyond contractual privity are required." *Silver Hill Station Ltd. P'ship v. HSA/Wexford Bancgroup, LLC*, 158 F. Supp. 2d 631, 642 (D. Md. 2001).

As was the case in her first suit against Wells Fargo, Plaintiff simply has not shown any special relationship that can give rise to a tort duty. The Amended Complaint supports Count II, for negligence, with the conclusory statement that "[s]pecial circumstance were created between Plaintiff and WFB when WFB acted for its own self- interest and acted outside the contract and

---

[5]    However, I do note that unlike Maryland Rule 1-311, which requires an attorney to certify that "to the best of the attorney's knowledge, information, and belief, there is good ground to support" any pleading or paper, Fed. R. Civ. P. 11 creates a higher bar for counsel to clear. Rule 11 requires a certification that any factual contentions are made "to the best of the person's knowledge, information, and belief, *formed after an inquiry reasonable under the circumstances.*" Fed. R. Civ. P. 11(b) (emphasis added). Although I must credit the allegations in a complaint on a motion to dismiss, it is concerning that this is the second case in which counsel appears to be disputing facts that Wells Fargo has supported with documentary evidence. *See supra.*

performed acts, as explained herein, that it had personal and actual knowledge was not authorized by the contract . . . ." Am. Compl. ¶ 101. Other than a heading that reads "SPECIAL CIRCUMSTANCES," Am. Compl. 53, I cannot discern any special circumstances pleaded with respect to Count III, for fraud. Count VI, also for negligence, contains the conclusory (and difficult to decipher) statement that:

> The relationship between QBE, WFB and Plaintiff is special and not one of ordinary contract relationship. . . . Their joint and separate action in creating profit from the premiums only served their financial interest and the detriment of Plaintiff. The circumstances are special because they manipulate the contract terms for justification for acts they knew were illegal and not permitted under the terms of the contract.

Am. Compl. ¶ 140.A. These unsupported and conclusory statements simply do not satisfactorily allege special circumstances or a special relationship that would allow Plaintiff to bring a tort claim arising out of an alleged breach of contract. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). Count VII contains no allegations of special circumstances at all. *See* Am. Compl. 71–74.

Finally, these claims virtually are identical to those asserted in the First Action, which the Fourth Circuit found "alleged no extraordinary circumstances that would justify finding Wells Fargo owed her a duty in tort beyond the written contract between the parties." *Cannon v. Wells Fargo Bank, N.A.*, 509 F. App'x 251, 252 (4th Cir. 2013). Even if claims arising out of the 2012 Certificate are not barred by res judicata, I remain bound by the Fourth Circuit's legal ruling on essentially identical facts.

Accordingly, Plaintiff has not alleged any basis for bringing tort claims against Wells Fargo, and Wells Fargo's motion to dismiss should be GRANTED with respect to Counts II, III, VI, and VII as alleged against Wells Fargo.

### 3.   Count I for Breach of Contract

The one remaining claim asserted against Wells Fargo is Count I, for breach of contract. "To prevail in an action for breach of contract, a plaintiff must prove that the defendant owed a contractual obligation and that the defendant breached that obligation." *Carroll Co. v. Sherwin–Williams Co.*, 848 F. Supp. 2d 557, 563 (D. Md. 2012).

As a threshold matter, Count I sets forth long litany of wrongs purportedly committed against Plaintiff—the overwhelming majority of which are utterly irrelevant to any contract claim. *See, e.g.*, Am. Compl. ¶ 79 (alleging that payments between QBE and Wells Fargo constituted "kickbacks" for reasons that are not made clear); *id.* ¶ 80 (alleging that "no consideration was conferred upon Plaintiff for the procurement and placement of" LPI coverage); *id.* ¶ 81 ("[T]he terms of the Certificate conflicts with the terms of the contract. . . . The *Certificate* is completely outside of the contract."); *id.* ¶ 85 (alleging violation of U.C.C. provisions respecting negotiable instruments and bank deposits). These convoluted and difficult-to-decipher allegations do not suffice to satisfy the mandate of Rule 8's requirement of a "short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2).[6]

But even if they did, Plaintiff's allegations fall short on their face. Plaintiff asserts, in essence, that Wells Fargo obtained LPI coverage on the Property, Am. Compl. ¶ 74, even though it "had knowledge of the existing coverage." Am. Compl. ¶ 84. But this is not the relevant question under the Deed of Trust. Rather, the Deed of Trust places obligations on Plaintiff to "promptly give to Lender copies of all policies, renewal certificates, receipts of paid premiums and renewal notices," upon Wells Fargo's request. Deed of Trust § 5, ¶ 3. It also preserves the

---

[6]   To the extent that Plaintiff repeatedly alleges that the 2012 Certificate included coverage for personal property, *see, e.g.*, Am. Compl. ¶ 81, those allegations plainly are contradicted by the 2012 Certificate itself, which shows no coverage or premium for personal property. 2012 Certificate.

right of Wells Fargo "to disapprove such policies." *Id.*  Nowhere in Plaintiff's complaint does she allege that she provided her policies to Wells Fargo; to the contrary, she has alleged that "[d]uring the litigation of Civil Action#8-12-cv-00377 Plaintiff's voluntary coverage was reaffirmed," Am. Compl. ¶ 40.b, and has attached a handwritten note on a mortgage statement objecting to the placement of LPI coverage, July 2012 Mortgage Statement.  Because the Deed of Trust expressly permits Wells Fargo to place LPI coverage where Plaintiff has not tendered a satisfactory insurance policy, they cannot have breached the terms of the Deed of Trust by so doing. *See also Cannon I* Hr'g Tr. 44:21–24 ("Now, the count that is for breach of contract, again, is deficient as a matter of law, because the—Wells Fargo had the right to place insurance in the absence of insurance information being satisfactorily provided to it."), *see also Cannon,* 509 F. App'x at 251.

Wells Fargo also has represented that "the full amount [of the premium under the 2012 Certificate] was re-credited—thus completely reversing the prior debit entry—to her mortgage account on September 19, 2012, after she finally provided proof of adequate private insurance on the property." Wells Fargo Reply 6; *see also* Cassity Aff. ¶ 4, Wells Fargo Reply Ex. B, ECF No. 26-2.  A similar contention was made in *Cannon I, see Cannon I* Hr'g Tr. 5:1–8, where this factual dispute seemed to create some confusion in Plaintiff's counsel as to his professional duties of candor to the Court, Md. Lawyers' Rules of Prof'l Conduct 3.3(a), as well as his obligations under Fed. R. Civ. P. 11.  As in *Cannon I,* Plaintiff has alleged that she actually has paid the premiums in question. *See, e.g.,* Am. Compl. § 34.  Although I must credit the factual allegations in Plaintiff's complaint in the context of a motion to dismiss, the possibility that the complaint may be taking liberties with the facts is of concern.

In any event, because the Deed of Trust granted Wells Fargo the right to place an LPI policy on the Property under the facts that Plaintiff has alleged, Wells Fargo's motion to dismiss must be GRANTED as to Count I.

### B. QBE's Motion to Dismiss

#### 1. Claim and Issue Preclusion

At the outset, it is apparent that any claims against QBE that are based on LPI placements other than the 2012 Certificate are claims that "could have been decided in [the] original suit." *Laurel Sand & Gravel Co.*, 519 F.3d at 161 (citing *Pueschel*, 369 F.3d at 355). In fact, Judge Titus already has dismissed similar claims that Plaintiff had attempted to bring in *Cannon I*. *Cannon I* Hr'g Tr. 46:19–20 ("I will dismiss [the complaint] also without prejudice as to QBE."). Plaintiff seems to contend that because Judge Titus dismissed Plaintiff's claims against QBE without prejudice to Plaintiff's right to amend her complaint, *id.* at 46:20–23, the judgment in *Cannon I*, now affirmed on appeal, lacks finality or preclusive effect. *See* Pl.'s QBE Opp'n 36. This simply is incorrect. Judge Titus gave Plaintiff the option to amend her complaint *in that action*. By declining to amend her complaint in *Cannon I*, Plaintiff elected to stand on her complaint as written. *See Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). Doing so did not rob *Cannon I* of finality or preserve an option for Plaintiff to test identical claims before a different judge. Accordingly, the only claims that are not barred by res judicata are those arising out of the 2012 Certificate.

QBE argues that even these are barred by collateral estoppel, also described as "issue preclusion." *See* 18 Charles Alan Wright et al., *Federal Practice & Procedure* § 4416. "Collateral estoppel forecloses 'the relitigation of issues of fact or law that are identical to issues which have been actually determined and necessarily decided in prior litigation in which the

party against whom [issue preclusion] is asserted had a full and fair opportunity to litigate.'"
*Sedlack v. Braswell Servs. Grp., Inc.*, 134 F.3d 219, 224 (4th Cir. 1998) (quoting *Ramsay v. INS*,
14 F.3d 206, 210 (4th Cir. 1994)).    For collateral estoppel to apply, the party seeking its
application

> must demonstrate that (1) the issue or fact is identical to one previously litigated;
> (2) the issue or fact was actually resolved in the prior proceeding; (3) the issue or
> fact was critical and necessary to the judgment in the prior proceeding; (4) the
> judgment in the prior proceeding is final; and (5) the party to be foreclosed by the
> prior resolution of the issue or fact had a full and fair opportunity to litigate the
> issue or fact in the prior proceeding.

*In re Microsoft Corp. Antitrust Litig.*, 355 F.3d 322, 326 (4th Cir. 2004) (citing *Parklane Hosiery*

*Co. v. Shore*, 439 U.S. 326, 331–32 (1979)).

Collateral estoppel requires that "the claims in the two suits are sufficiently identical to

arise out of the same series of transactions and/or could have been filed in the first suit." *Hawks*

*v. David*, No. PJM-10-2250, 2010 WL 3938349, at *3 (D. Md. Oct. 6, 2010).   QBE argues that

the issue at the heart of this case already was decided in the First Action: that the Deed of Trust

did not require notice that Wells Fargo would be obtaining LPI coverage and that "Plaintiff's LPI

was authorized by her Deed of Trust." *See* QBE Dismiss Mem. 9–10.   I find that the question of

whether notice of LPI placements is required under the Deed of Trust is a contract interpretation

question identical to an issue raised in *Cannon I*. *Compare* Am. Compl. ¶ 26, *with Cannon I*

Compl. ¶ 9.   In contrast, the question of "whether Plaintiff's LPI was authorized by her Deed of

Trust," QBE Dismiss Mem. 10, relies on different facts: what transpired in 2012 is not

necessarily the same as what transpired in prior years. But insofar as *Cannon I* decided that, as a

matter of law, "Wells Fargo had the right to place insurance in the absence of insurance

information being satisfactorily provided to it," *Cannon I* Hr'g Tr. 44:22–24, that issue is

identical to the fundamental question at issue here, *cf., e.g.*, Am. Compl. ¶ 35 (alleging that "LPI

is improper and impermissible where the Collateral Property is adequately insured by Plaintiff's

voluntary coverage").

Second, both of these issues actually were decided in *Cannon I*. Judge Titus ruled that

Wells Fargo "had no obligation to inform the plaintiff of their intent to obtain coverage," *Cannon*

*I* Hr'g Tr. 45:8–10, and squarely held that they had the right to procure LPI coverage if they were

not satisfied with Plaintiff's coverage, "even if one were to assume that this borrower showed

them insurance." *Id.* at 45:5–8. Moreover, because the Fourth Circuit expressly affirmed the

holding that notice was not required before Wells Fargo obtained LPI coverage, *Cannon*, 509 F.

App'x at 252, I would be obligated to follow that holding irrespective of whether collateral

estoppel applies.

Third, those findings were "essential to" the prior judgment. *See Zeno v. United States*,

No. DKC-09-544, 2009 WL 4910050, at *7–8 (D. Md. Dec. 11, 2009) (explaining that an issue

or fact that is "critical and necessary" to a judgment must be one that is essential to support the

judgment, and not merely an alternative basis independently capable of supporting a judgment).

Judge Titus unambiguously based his ruling that no breach of contract had occurred on both the

holding that the Deed of Trust did not require prior notice *and* the holding that it allowed Wells

Fargo to place LPI coverage in the absence of adequate proof of insurance. *See Cannon I* Hr'g

Tr. 44:21 – 45:10. Had either the failure to give notice or the placement of the LPI been a

potential breach of the Deed of Trust, dismissal would not have been proper in *Cannon I*.

The judgment in *Cannon I* is final and has been affirmed on appeal. *Cannon*, 509 F.

App'x 251. This suggests that it not only is final for the purpose of collateral estoppel, but also

was a final judgment under the more stringent standard created by 28 U.S.C. § 1291. *Cf. First*

*Jersey Nat'l Bank v. Brown (In re Brown)*, 951 F.2d 564, 569 (3d Cir. 1991) ("Unlike claim

preclusion, the effectiveness of issue preclusion, sometimes called collateral estoppel, does not require the entry of a judgment, final in the sense of being appealable.").

Finally, Plaintiff had a full and fair opportunity to litigate these issues in the First Action. The sort of conduct that would constitute a breach of the Deed of Trust was central to Plaintiff's breach of contract action, and she had "every incentive to litigate vigorously" given that the survival of her action was at stake on the motion to dismiss in the First Action. *See S.E.C. v. Resnick*, 604 F. Supp. 2d 773, 780 (D. Md. 2009).

Plaintiff argues that she "was not given a fair opportunity to be heard on the claims and issues against QBE in [the First Action], because the court dismissed all claims and issues against QBE for future litigation." Pl.'s QBE Opp'n 36. However, Plaintiff's objection not only is incorrect but also misses the point—the relevant question is whether these specific issues conclusively were decided *against Plaintiff*. "A party precluded from relitigating an issue with an opposing party . . . is also precluded from doing so with another person unless the fact that he lacked full and fair opportunity to litigate the issue in the first action or other circumstances justify affording him an opportunity to relitigate the issue." Restatement (Second) of Judgments § 29. Plaintiff has pointed to no reason why QBE's lack of appearance in the First Action prevented her from fully and fairly litigating her claims before Judge Titus, and I cannot see any basis for such an argument.

### 2. Count IV for Unjust Enrichment

QBE correctly asserts that Plaintiff has not adequately stated her claims against QBE. Count IV alleges unjust enrichment, for which Plaintiff must show:

> (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value.

*Bediako v. Am. Honda Fin. Corp.*, 850 F. Supp. 2d 574, 582 (D. Md. 2012). The basis of Plaintiff's unjust enrichment claim is that QBE "*Retained* the financial benefits" of LPI policies that were placed in violation of the Deed of Trust. *See* Am. Compl. ¶ 128.

But insofar as Plaintiff has not pleaded facts under which the LPI placements were improper under the Deed of Trust, *see supra*, there are no grounds to find that QBE has been "unjustly" enriched. Further, unjust enrichment is an appropriate remedy when a defendant has retained benefits that it has not earned. *See, e.g., EDI Precast, LLC v. Carnahan*, ---- F. Supp. 2d ----, 2013 WL 6064719, at *10 (D. Md. Nov. 12, 2013). Here, Plaintiff does not allege that QBE failed to place the insurance policies for which Plaintiff was charged (although QBE asserts that it has cancelled some of those policies and refunded the premiums paid, QBE Dismiss Mem. 15). To the extent that Plaintiff paid for LPI coverage—even if she did not want to do so—there is little question that QBE provided the coverage paid for. If QBE was enriched by placing these policies, it was not enriched unjustly. Finally, on a functionally identical claim, Judge Kollar-Kotelly ruled that "the theory of unjust enrichment necessarily relies on the Plaintiff['s] success on her breach of contract claim against the Wells Fargo defendants," *Cannon v. Wells Fargo Bank N.A.*, 926 F. Supp. 2d 152, 171 (D.D.C. 2013),[7] which I already have found cannot succeed, *see supra*. Thus Count IV must be dismissed.

---

[7] The parties do not appear to have argued expressly that Judge Kollar-Kotelly's opinion in *Cannon v. Wells Fargo N.A.*, 926 F. Supp. 2d 152, which relates to LPI placements on a different property owned by Plaintiff, has preclusive effect. However, upon cursory review it appears to relate to similar transactions and occurrences to those in this case and to address many of the legal contentions at issue here. Therefore, it seems possible that it could have claim preclusive, or at least issue preclusive, effect on Plaintiff's claims. Because the parties have not advanced this argument with respect to Plaintiff's litigation in the District of Columbia, I have not addressed it here beyond acknowledging the existence of this issue.

### 3. Counts V and VI for Negligence

Counts V and VI both allege negligence. To prevail on a claim for negligence, a plaintiff must show: "(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from defendant's breach of the duty." *Patton v. U.S.A. Rugby Football*, 851 A.2d 566, 570 (Md. 2004). QBE has observed that "'[w]here the failure to exercise due care creates a risk of economic loss only, courts have generally required an intimate nexus between the parties as a condition to the imposition of tort liability.'" *100 Inv. Ltd. P'ship v. Columbia Town Ctr. Title Co.*, 60 A.3d 1, 11 (quoting *Jacques*, 515 A.2d at 759–60). Plaintiff has not alleged any intimate nexus at all and, in fact, it is clear that QBE was not even in contractual privity with Plaintiff. *See* Am. Compl. ¶¶ 131 ("QBE is not a party to any contract between Wells Fargo and Plaintiff."), 139 ("QBE has no contract or privity of contract with Plaintiff for the ("*certificate*") non-collateral insurance.").

Moreover, Plaintiff's negligence claims suffer from a more fundamental problem. Plaintiff does not appear to have alleged a legitimate duty that was breached by QBE. In Count V, Plaintiff alleges that QBE had a "duty of ordinary care owed to Plaintiff," based on its "personal knowledge" that the Deed of Trust did not authorize Wells Fargo to obtain LPI coverage on the Property. Am. Compl. ¶ 131. Because I have found (and am obliged by collateral estoppel to find) that the Deed of Trust allowed Wells Fargo to obtain LPI coverage, *supra*, the duty alleged by Plaintiff simply cannot exist.

Count VI appears to rest on the additional allegation that the 2012 Certificate "was not collateral and was procured outside of the terms of the Contract and is independent of the contract." Am. Compl. ¶ 139. Though far from clear, this appears to be an attempt to evade the

25

rule set forth in *Jacques* that tort claims generally do not arise out of breaches of contract, *see supra*, based on Plaintiff's claim that the 2012 Certificate provided protection of Plaintiff's personal property that was not contemplated by the Deed of Trust, Am. Compl. ¶ 37. However, the 2012 Certificate clearly does not offer coverage of personal property, 2012 Certificate, and therefore Plaintiff's exhibits controvert the facts alleged in the complaint, *see Fayetteville Investors*, 936 F.2d at 1465. Accordingly, Plaintiff has not stated—and cannot state—a claim under Count V or VI, and those counts must be dismissed.

### 4.  Count VII for Fraudulent Concealment

Finally, Count VII, alleging fraudulent concealment, appears actually to allege violations of Defendants' discovery obligations in the First Action. *See* Am. Compl. ¶ 149 ("Defendant Wells Fargo and Defendant QBE have not provided Plaintiff and the Class all of the LPI and Certificate that Wells Fargo procured and QBE placed on Plaintiff's property and on the Class Members' Property between April 5,2010 to May 01, 2013."). Any such disputes are outside the scope of this case, in which discovery has not yet begun.

To the extent that Plaintiff's complaint can be construed to plead fraudulent concealment, any such claims must be "stat[ed] with particularity." Fed. R. Civ. P. 9(b). But there is a world of difference between pleading with particularity and pleading with prolixity. *See Baxter v. A.R. Baron & Co., Inc.*, No. 94 Civ 3913(JGK), 1995 WL 600720 (S.D.N.Y. Oct. 12, 1995) ("[P]articularity is not to be confused with length."). Here, the mere fact that I cannot determine the basis for Plaintiff's fraudulent concealment claim from the opaque allegations of the Amended Complaint is, itself, sufficient to find that Plaintiff has not satisfied the heightened pleading requirements of Rule 9(b). *See, e.g., Arnold v. CitiMortgage, Inc.*, 578 F. Supp. 2d 801, 803–04 (D. Md. 2008) (finding that the "[c]omplaints in these cases are incoherent and difficult,

at best, to read" and reminding plaintiffs that "[i]t is a patent violation of [Rule 9(b)] to make vague, generalized allegations of fraud").

It also appears that even had she satisfied Rule 9(b), Plaintiff could not plead a valid claim for fraudulent concealment. The elements of fraudulent concealment are:

> (1) the *defendant owed a duty to the plaintiff to disclose a material fact;* (2) the defendant failed to disclose that fact; (3) the defendant intended to defraud or deceive the plaintiff; (4) the plaintiff took action in justifiable reliance on the concealment; and (5) the plaintiff suffered damages as a result of the defendant's concealment.

*Blondell v. Littlepage*, 991 A.2d 80, 94 (Md. 2010). Plaintiff's claim alleges that the relevant duty was one to "disclose to Plaintiff and the Class Members the existence all LPI, Certificates and their associated premiums and all payment transaction." Am. Compl. ¶ 150. But because this purported duty to disclose runs directly counter to the clear terms of the Deed of Trust, *see supra*; *see also* Deed of Trust § 5, Plaintiff's allegations of a duty to disclose simply lack any basis in fact or law. Accordingly, Plaintiff's claim for fraudulent concealment must be dismissed.

### C. Class Allegations

Plaintiff has headed a section of the Complaint "CLASS ACTION ALLEGATIONS IN COMPLIANCE WITH D.C. Fed. Court Local Rule 21.1 (a); PETITION FOR CLASS CERTIFICATION IS SOUGHT UNDER FEDREAL RULES OF CIVIL PROCEDURE RULE 23." Am. Compl. 75. This appears to be an attempt to satisfy a requirement of the local rules in the U.S. District Court for the District of Columbia, which have no applicability in this Court. Because Plaintiff already has filed a Motion for Class Certification and Limited Discovery, ECF No. 37, it does not seem that these allegations were intended to allege a separate cause of action

or to seek certification. Thus the "CLASS ACTION ALLEGATIONS" will be disregarded and, to the extent necessary, dismissed.

### D. Plaintiff's Motion to Convert

Plaintiff correctly has noted that Defendants' replies "attach Affidavits and Exhibits . . . which . . . are extraneous evidence and are improper for 12 (b) (6) motion to dismiss consideration." Pl.'s Mot. to Convert 1–2. Because I have not considered these exhibits in granting the motions to dismiss, there is no need to convert those motions into motions for summary judgment. Fed. R. Civ. P. 12(d) (calling for conversion only where "matters outside the pleadings are presented to *and not excluded by* the court" (emphasis added)); *see also Cannon*, 509 F. App'x at 251 (finding that a motion to dismiss properly was granted in *Cannon I* without considering materials outside the complaint). Therefore, Plaintiff's Motion to Convert is DENIED.

## IV.   CONCLUSION

For the aforementioned reasons:

Defendant Wells Fargo's Motion to Dismiss is GRANTED;

Defendant QBE's Motion to Dismiss is GRANTED;

Plaintiff Andrea Jackson Cannon's Motion to Convert is DENIED;

Plaintiff's Amended Complaint is DISMISSED with prejudice; and

If Defendants intend to seek sanctions under Fed. R. Civ. P. 11, they must do so within thirty days of this order, notwithstanding Loc. R. 105.8 & 109.2 or Fed. R. Civ. P. 11(c)(2).

A separate order shall issue.

Dated: February 20, 2014 ___                     _____/S/_____

                                               Paul W. Grimm
                                               United States District Judge

dsy